**JEAN PATOU, INC., Appellant,**

v.

**THEON, INC., Appellee.**

**No. 93–1204.**

United States Court of Appeals, Federal Circuit.

Nov. 17, 1993.

---

Howard P. Peck, Atty., Abelman, Frayne & Schwab, New York City, argued for appellant. With him on the brief was Julianne Abelman.

Mark F. Harrington, Atty., Perman & Green, Fairfield, CT, for appellee.

Before RICH, MAYER, and SCHALL, Circuit Judges.

RICH, Circuit Judge.

This appeal is from a decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB) which both sustained and dismissed an opposition to registration of DERMAJOY as a trademark for a single product, the net result of which is that the mark would, presumably, be registered but for this decision. We agree with the TTAB decision and its supporting opinion insofar as it sustained the opposition and reverse it insofar as it dismissed the opposition.

### The Facts

Theon, Inc. (applicant) applied to register its trademark DERMAJOY in the PTO, application serial No. 73/745,047, filed August 9, 1988, claiming use of the mark since July 29, 1988.

The usual specimens filed in the PTO show the product on which DERMAJOY had been used to be an astringent gel for application to human skin. We note particularly that the application was filed within eleven days of the first use of the mark anywhere. In more detail, the specimens show the face and back of a collapsible tube in which the gel is marketed. On the face is the trademark extending longitudinally in large letters, above which in smaller type are the words

A UNIQUE MEDICATED GEL

Relieves and soothes irritated skin

and below the trademark are the words

ASTRINGENT FOR THE SKIN.

On the rear of the tube in relatively small type there are, inter alia, the following statements:

INDICATIONS: For relief of inflammatory conditions and minor skin irritations due to allergies, insect bites, athlete's foot, poison ivy and minor ulcerations of the skin.

Use DermaJoy as a daily skin conditioner and toner to relieve and moisturize your skin. Relieves dryness, chapping, itching, tightness and stiffness of the skin of the hands.

ACTIVE INGREDIENT: Aluminum Acetate.

OTHER INGREDIENTS: Water, Propylene Glycol, Hydroxypropyl Methylcellulose 2208 PPG 20, FDC Blue #1.

Contemplating that its DERMAJOY product could be viewed as either a cosmetic or a pharmaceutical and desiring maximum protection, applicant filed a single application to register its mark in two classes, stating in its application:

The above identified applicant has adopted and is using the trademark ... for *cosmetic preparations for skin care in International Class 3; and for pharmaceutical preparations for skin care, in International Class 5* and requests that said mark be registered ... on the Principal Register.... [Emphasis ours.]

In the first office action, October 11, 1988, the PTO Examining Attorney stated:

The identification of goods is unacceptable as indefinite. The Applicant may adopt the following identification, if accurate: Cosmetics, namely, astringent for the skin, facial cleansing cream, and body lotion in International Class 3. Pharmaceutical preparations for the treatment of skin diseases in International Class 5. TMEP section 804.

By amendment filed October 19, 1988, applicant responded by adopting verbatim what the Examining Attorney proposed. The PTO issued a notice of publication and the mark was published in the Official Gazette of February 21, 1989, for opposition. 37 CFR § 2.80.

Opposer, Jean Patou, Inc., timely filed its notice of opposition and this proceeding commenced. Opposer relies on ownership of its Registration No. 529,337 of August 22, 1950, of the trademark JOY for perfumes and toilet waters, in use by it since 1931, registered in former Class 51, Cosmetics and toilet preparations, the use of which class is now replaced in the PTO by International Class 3. Opposer also relies on its prior *use* of the mark JOY, proved in the opposition, according to the opinion of the TTAB, on "a line of various other cosmetics sold under the mark, including, soaps, bath powders, *body lotions,* bath gels, and *body creams.*" [Emphasis ours.]

Aside from the above, there was testimony and deposition evidence but opposer has not included it in its appendix so we take additional facts from what the TTAB has said and concluded in its opinions. Another aspect of this case is that the applicant-appellee has filed in this court a Notice of Reliance on Record, has filed no brief, and, of course, did not appear at oral argument. We turn now to the TTAB's opinion.

The TTAB first noted that "There is no question as to priority in this case." It next correctly stated that "the question of likelihood of confusion before us involves the goods as set forth in the application." The reference to "likelihood of confusion" comes from the statute on which this opposition is based, 15 U.S.C. § 1052(d) which reads, in pertinent part, as follows:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

.　　.　　.　　.　　.

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

Following that statute and precedents cited, the TTAB said:

All that is required to support a holding of likelihood of confusion is that the goods or

services, on or in connection with which the parties' marks are used, be related in some manner or be marketed under conditions which would cause a potential purchaser to assume, because of the marks under which they are sold, that they emanate from the same source.

We agree. The TTAB then went on to hold that "it is clear that the goods applicant has identified in Class 3 are, in part, identical to the goods marketed by opposer and are otherwise related thereto." It further held that "opposer's JOY mark is an arbitrary, very strong and well known mark" and that "opposer is entitled to a wide ambit of protection for its mark and may, thus, preclude the registration of a confusingly similar mark for similar or related goods." Turning to the differences in the marks, the TTAB said, "applicant's mark comprises the whole of opposer's mark to which had been added the prefix, 'derma', ... [which] is quite descriptive and is of little, if any, assistance in distinguishing applicant's mark from opposer's mark." It then concluded that there can be no doubt that confusion would be likely. The TTAB's final holding on this branch of the case was: "the opposition is sustained as to the goods in Class 3." For all of the good and legally sufficient reasons stated by the TTAB, we agree with that holding, and so does the opposer. The practical effect on the applicant is that it is *not* going to be allowed to register the mark DERMAJOY for its astringent gel with respect to its goods in Class 3.

### The Appealed Issue

■ With respect to registering DERMA-JOY in Class 5, asked and paid for in the same application by the applicant, the TTAB started afresh with an entirely separate line of reasoning as though it were dealing with an entirely different product put out by the applicant, which the TTAB called "a gel used to treat skin diseases." Since the TTAB opinion appears not to have been published, we quote the line of reasoning by which it arrived at the conclusion that, as to "the goods in Class 5," the opposition should be *dismissed*, thus, presumably, resulting in the issuance of a registration of DERMAJOY on the principal register, thereby completely nullifying its decision respecting the *same goods* "in Class 3." The TTAB said at pages 6–7 of its opinion:

As to the goods identified in Class 5, there are significant differences between perfumes, toilet waters and cosmetic products for cleansing, smoothing and creaming the skin and a gel used to treat skin diseases. One purchases opposer's products with anticipation of pleasurable sensations to be derived from their use, while applicant's product is purchased because one is experiencing an unpleasant sensation which it wishes to eliminate. Opposer's products are purchased to give pleasure to others as well. It is unlikely that one would buy applicant's product as a gift for a wife, mother or significant other, as one would opposer's products. We believe that the differences here preclude the likelihood that purchasers will assume that the producer of one of these products would also produce the others, even where the marks might be similar.

While the fact that applicant is seeking to register the same mark for both types of products may lend credence to an opposite position, it is noted that applicant's witnesses had testified that the dual use it has suggested for its product has led to a great deal of confusion of its purchasers who had called to express consternation at the incongruity of those uses and that applicant intends to cease its presentation of the product for any but a pharmaceutical purpose. We do not believe that one commonly expects a purveyor of perfumes and other cosmetics to also market medicated gels for relieving itches.

There are flaws in this line of reasoning. In referring to "both types of products," the TTAB seems to have forgotten that applicant has made no reference in its application to more than one type of product—indeed, it has shown use of its mark on only a single product, a product which, by reason of its various properties and uses can reasonably be categorized as either a cosmetic or a pharmaceutical and thus be entitled to registration in more than one classification. *See In re International Salt Co.*, 166 USPQ 215

(TTAB 1970) (trademark for common salt registrable in two classes because of multiple uses).

■ The benefits of a Principal Register registration apply with respect to the goods named in the registration without regard to the class or classes named in the registration. The statute authorizing the establishment of a classification is 15 U.S.C. § 1112 which provides:

> The Commissioner may establish a classification of goods and services, for the convenience of the Patent and Trademark Office administration, but *not to limit or extend the applicant's or registrant's rights.* [Our emphasis.]

It is elementary that a registrant has rights under the statute only with respect to goods on which the trademark has been used. Trademark ownership results only from use, not from registration. Classification is to facilitate searching for registered marks which is primarily what is meant by "the convenience of the" PTO. *See also* 37 CFR § 2.85(g) ("Classification schedules shall not limit or extend the applicant's rights.").

In our view, all of the TTAB's reasoning with respect to what it viewed as the Class 3 goods applies with equal force to registration in Class 5 and leads to the same result, namely, likelihood of confusion and sustaining of the opposition. The result reached by the TTAB with respect to registration in class 5 is incongruous. With respect to applicant's single product the decision was that the mark DERMAJOY is both registrable and not registrable, depending on the classification designated. However, classification is wholly irrelevant to the issue of registrability under section 1052(d), which makes no reference to classification. *Cf.* 15 U.S.C. § 1112; *See also* McCarthy on Trademarks and Unfair Competition, § 19.14, (3d ed. 1992).

Regardless of what applicant's intent may have been when the testimony was taken with respect to its future sales strategy, its product remains in the same trade channels as opposer's products and suitable for many of the same uses, as the TTAB found.

It is clear to us what happened in this case. Like the salt (NaCl) in *International Salt,* appellant's product has dual uses, which place it near the borderline between "cosmetics" and "pharmaceuticals." Believing that naming two classes in its application somehow provides more "protection," applicant named two classes in its application. In each, however, the product was initially stated in the application to be the same: "preparations for skin care." The Examining Attorney found that goods description "unacceptable as indefinite." She suggested a more definite description to the applicant which would be acceptable to her, namely

> Cosmetics, namely, astringent for the skin, facial cleansing cream, and body lotion in International Class 3. *Pharmaceutical preparations for the treatment of skin diseases in international Class 5.* [Emphasis ours.]

Applicant's attorney followed that approach, and the result was passage of the application to publication. Necessarily, the Examining Attorney got her information from the specimens and what was printed on them and knew there was but a *single product.* Ten specimens, all the same, were filed, five for each named class to comply with the rules, 37 CFR §§ 2.56, 2.87. In reality, as the Examining Attorney well knew, the goods she thus elected to describe in Class 3 and in Class 5 were one and the same product. It is at least questionable whether it was not her thought that what she deemed to be "pharmaceutical preparations" were also astringents for the skin, facial cleansing creams, and body lotions, as the specimens clearly disclosed and that she was merely adding a designation of Class 5. Were it otherwise, the description "preparations for the treatment of skin diseases" was at least as unacceptably indefinite as the applicant's original denomination of goods, "preparations for skin care." In view of this decision, however, the appropriateness of the description of goods is moot.

Be that as it may, there being only one product involved in this case, it cannot be

that its marketing under the DERMAJOY trademark is both likely and not likely to cause confusion, mistake, or to deceive under section 1052(d) with respect to the same goods marketed by opposer under its trademark JOY.

The decision of the TTAB insofar as it held that the opposition should be dismissed must be and is *reversed.*

REVERSED.