NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1443
(Serial No. 78/940,043)

IN RE INCA TEXTILES, LLC

Bradley M. Ganz, Ganz Law, PC, of Hillsboro, Oregon, for Inca Textiles, LLC.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Christina J. Hieber, and Robert J. McManus, Associate Solicitors.

Appealed from: United States Patent and Trademark Office
        Trademark Trial and Appeal Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1443
(Serial No. 78/940,043)

IN RE INCA TEXTILES, LLC

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:  September 2, 2009

_____

Before NEWMAN, SCHALL, and BRYSON, <u>Circuit Judges.</u>

NEWMAN, <u>Circuit Judge</u>.

Inca Textiles, LLC ("Inca Textiles") appeals the decision of the Trademark Trial and Appeal Board ("TTAB" or "the Board") which affirmed the Examining Attorney's refusal to register the mark INCA MAMA.  We <u>affirm</u> the Board's decision.

## BACKGROUND

On July 28, 2006, Inca Textiles filed an application (Serial No. 78/940,043) to register the trademark INCA MAMA for goods identified as "maternity wear and clothing for pregnant and nursing women, namely sweaters, wraps, coats, dresses, skirts, shirts, tops,

pants, nightgowns." The examining attorney refused the registration under Section 2(d) of the Lanham Act, 15 U.S.C. §1052(d), on the ground that the mark INCA MAMA is likely to be confused with the mark INCA GIRL, registered for "clothing; namely tee shirts, sweatshirts, shorts, pants, jeans, jackets, skirts, dresses, caps and socks and footwear; namely, shoes, sandals and boots." The INCA GIRL mark was registered on July 8, 2003, as a composite word and design, as follows:



The examining attorney found that the goods in Inca Textiles' application for INCA MAMA were within the recitation of goods for INCA GIRL, and that the average purchaser would be likely to conclude that the marks reflect a common source. The examining attorney submitted evidence that there are about thirty third-party registrations which cover both regular and maternity wear; and that many of the same retail entities sell both regular and maternity wear. The evidence included printouts of websites of The Gap, Old Navy, Ann Taylor Loft, Nicole Miller, Diane von Furstenberg, and Juicy Couture. The trademark

attorney concluded that the word "Inca" was dominant in both marks, in combination with another word that referred to women, for use with women's clothing. The trademark attorney rejected appellant's argument that the word "Inca" was weak.

The TTAB sustained the rejection, ruling that there was a high likelihood of confusion between INCA MAMA and INCA GIRL. Inca Textiles appeals.

DISCUSSION

Likelihood of confusion under the Lanham Act, 15 U.S.C. §1502(d), is a legal determination based on factual underpinnings. In re Chatam Int'l, Inc., 380 F.3d 1340, 1342 (Fed. Cir. 2004). The TTAB's legal conclusions receive plenary review, and its factual findings are reviewed to ascertain whether they were arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1365 (Fed. Cir. 1999). Evidence is deemed substantial if a reasonable person might find that the evidence supports the agency's conclusion. On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000).

In determining whether there is a likelihood of confusion between two marks, the marks are analyzed with the guidance of the factors identified in In re E. I. DuPont de Nemours & Co., 476 F.2d 1357, 1361 (CCPA 1973). Not all of the DuPont factors may be relevant to any given case, and only those factors implicated by the evidence and the particular mark need be considered. In re Dixie Restaurants, Inc., 105 F.3d 1405, 1406 (Fed. Cir. 1997). Doubts as to the likelihood of confusion are resolved in favor of the prior user of a mark. See Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265 (Fed. Cir. 2002) (resolving doubts about likelihood of confusion against the newcomer).

The first DuPont factor is "[t]he similarity or dissimilarity of the marks in their

entireties as to appearance, sound, connotation and commercial impression." DuPont, 476 F.2d at 1361. Inca Textiles argues that INCA GIRL is "a design not a word mark," and that because the words "INCA GIRL" appear on the female character's shirt and above her head, "the words are likely to be seen as the [female character's] name and not as a brand identifier." In a composite mark there is no general rule as to whether letters or design will dominate, and likelihood of confusion is determined as to the marks viewed as a whole. In re Electrolyte Labs., Inc., 929 F.2d 645, 647 (Fed. Cir. 1990). The question is whether the marks are sufficiently similar to be likely to cause confusion as to their source. DuPont, 476 F.2d at 1361. In this fact-laden inquiry, when the goods are closely related, a lesser degree of similarity may suffice to be likely to produce confusion. Century 21 Real Estate Corp. v. Century Life of Am., 970 F.2d 874, 877 (Fed. Cir. 1992).

The TTAB found that the words INCA GIRL are "significant if not dominant" in the design. Although Inca Textiles argues that the Board "dissected" the mark and considered only the words, that criticism is not supported by the Board's opinion. The Board considered the cited mark in its entirety, discussed the visual impression of the design, and compared the appearance, sound, connotation, and commercial impression of the marks INCA GIRL and design, and INCA MAMA as a word mark. The TTAB observed that in some of the appearances of INCA GIRL only the words were shown in association with women's clothing.

Another relevant DuPont factor is "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use." DuPont, 476 F.2d at 1361. Inca Textiles argues that "maternity clothing" is not similar to "regular clothing," and that the Board erred in finding that the

channels of trade are the same. Inca Textiles argues that maternity clothing is a "specialized application," outside the ordinary meaning of the term clothing. Inca Textiles refers to the Nice Agreement for classification of trademarks, stating that in the international classification (which has been adopted by the PTO) "clothing" and "maternity clothing" are separate categories.

The PTO correctly points out that likelihood of confusion to the consuming public is independent of the classification manual, and that classification schedules do not alter the scope of the registration. See 15 U.S.C. §1112 ("The Director may establish a classification of goods and services, for convenience of Patent and Trademark Office administration, but not to limit or extend the applicant's or registrant's rights."); Jean Patou, Inc. v. Theon, Inc., 9 F.3d 971, 975 (Fed. Cir. 1993)("[C]lassification is wholly irrelevant to the issue of registrability under section 1052(d), which makes no reference to classification."). We conclude that the Board did not err in finding that maternity clothing is sufficiently similar to women's clothing in general, as to contribute confusion as to the source of the goods, particularly when sold in the same retail outlet.

This leads to another relevant DuPont factor, "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." DuPont, 476 F.2d at 1361. Inca Textiles argues that the Board gave more weight to evidence of on-line channels of trade than of in-store sales, and that this was clearly erroneous. According to Inca, purchases of maternity clothing are particularly unlikely on-line, and the presence of highly diversified on-line retailers makes evidence of on-line overlap of channels of trade "less valuable" than evidence of overlap in physical channels of trade. Although the Board concluded that the channels of trade are at least overlapping, it did not rely solely on the website printouts of

on-line retail stores.

The TTAB considered all of the applicant's arguments, which were fully presented, and elaborated on this appeal. However, we conclude that the entirety of the record contains substantial evidence in support of the factual underpinnings, and that the Board correctly concluded that there is a likelihood of confusion as to the source of the goods bearing the marks INCA GIRL, with or without the design, and INCA MAMA. That conclusion is sustained.

**AFFIRMED**