57 CCPA

**SCHENLEY DISTILLERS, INC.,**
**Appellant,**

v.

**GENERAL CIGAR CO., Inc., Appellee.**
**Patent Appeal No. 8328.**

United States Court of Customs
and Patent Appeals.
June 25, 1970.

Milton B. Seasonwein, New York City, attorney of record, for appellant.

John C. Vassil (Morgan, Finnegan, Durham & Pine), New York City, attorney for appellee; Hobart N. Durham, New York City, Harry C. Marcus, of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

FISHER, Judge.

The issue in this case is whether there is likelihood of confusion, mistake or deception in the concurrent use of the identical trademark "OLÉ" for cigars and for tequila. The Trademark Trial and Appeal Board dismissed the opposition with an opinion dated October 12, 1967, 155 USPQ 742. Petitioner, Schenley Distillers, appeals.

Appellant's agument is that in today's social pattern the imbibing of alcoholic beverages and the use of tobacco products are closely associated. Appellant points out that the two products have many common places of sale, common times of customary use, a similar commercial impression, and similar drives for use. There are also instances of references to alcoholic beverage flavors or names in the advertising and trademarks of tobacco products. Further, appellant points to a growing pattern of corporate diversification and to the fact that companies in the tobacco business engage in many other enterprises—including one instance in which a tobacco company has undertaken to enter the field of distilled spirits.

Appellant relies upon Carling Brewing Co., Inc. v. Philip Morris, Inc., 277 F. Supp. 326 (N.D.Ga.1967), where the mark "BLACK LABEL" was used on beer and cigarettes. The court said:

Given the general situation where the public is generally unaware of the specific corporate structure of those whose products it buys, but is aware that corporate diversification, mergers, acquisitions and operation through subsidiaries is a fact of life, it is reasonable to believe that the appearance of "Black Label" on cigarettes could lead to some confusion as to the sponsorship of EITHER or both the cigarettes and the beer.

Appellant also points to the cases of John Walker & Sons, Ltd. v. Tampa Cigar Co., Inc., 124 F.Supp. 254 (S.D.Fla.1954), aff'd 222 F.2d 460 (5th Cir. 1955), and Geo. A. Dickel Co. v. Stephano Bros., 155 USPQ 744 (T.T.A.B.1967), where it was held on the basis of the facts presented that use of the same mark on both liquor and tobacco products would be productive of confusion and deception.

Appellant admits that its sales of tequila are relatively small in volume and only a small fraction of its overall sales of beverage distilled spirits, but it points out that the market for tequila is as yet quite small in the United States. Appellant contends that the quantum of use of a trademark is not of significance in determining whether it is entitled to protection because of likelihood of confusion. The conflict arising from such confusion can stunt the growth of the trademark and prevent it from attaining stature. Appellant cites cases for the proposition that it is priority of user alone which controls. Waldes v. International Mfrs. Agency Inc., 237 F. 502 (S.D.N.Y.1916); Sweet Sue Kitchens, Inc. v. C-B Drug Co., 159 USPQ 242 (T.T.A.B.1968); Geo. A. Dickel Co. v. Stephano Bros., supra; Phoenix Mfg. Co. v. Plymouth Mfg. Co., 286 F.Supp. 324 (D.Mass.1968). In the last cited case the court said:

If the rule were otherwise, relatively small registrants whose marks were infringed by larger companies would be barred from effectively expanding the use of their marks because of their identification with the larger infringers.

Appellee argues on the other hand that appellant's trademark, "OLE," as applied

to tequila, is a "weak" mark and thus not entitled to broad protection. The relative strength or weakness of a mark depends upon its distinctiveness and popularity. Appellee maintains that appellant's use of the product name in advertising and promotion has played up the suggestive connotations of the name rather than educating the public to accept the term as the hallmark of a particular source. In point of fact, the mark has not been the subject of wide or intensive advertising, nor has appellant used it on a great quantity of articles as symbols of its business. Appellant's small volume of sales of its product is cited as evidence of this.

Moreover, we note that appellant is a large producer of alcoholic beverages which employs different marks to identify each different species of beverage it sells (e.g., MacNaughton Canadian Whisky, Cook's Champagne, Dubonnet aperitif wine, etc.). No effort is made to transfer the good will of one product to another, but rather each maintains a distinct and separate image and identity. Appellee aptly points out that while the average consumer may be intellectually aware that many of these products probably have a common source, he could not be expected to know which group of products originate from the same source. It is much less likely, in the absence of a famous name or trademark evincing a common origin, that a consumer would expect that a liquor producer would employ the same name on goods even more diverse than different types of alcoholic beverage.

With respect to appellant's contention that it has been recognized as a principle that the use of the same mark on tobacco and alcoholic beverage products results in likelihood of confusion, we are rather of opinion that this principle has been invoked only in the presence of "special circumstances" such as unfair competition or a "famous" or "well known" mark. In McKesson & Robbins, Inc. v. P. Lorillard Co., 120 USPQ 306, 308 (T.T.A.B. 1959), it was held that the mark "NEWPORT" was not of such character that its use on cigarettes and alcoholic beverages would be likely to cause confusion or deception. The *John Walker* case, relied upon by appellant, is distinguishable in that the decision was grounded on a finding that "Johnnie Walker" was a "famous" mark by reason of long use and extensive advertising, and that the applicant intended to capitalize upon the fame of the mark. Likewise, in the *Dickel* case relied upon by appellant, the board found that "CASCADE" was "at least a well known mark" for whisky and that substantial use of the mark warranted a presumption that it was sufficiently well known to lead to a likelihood of confusion. In short, the "rule" of these cases is in fact an exception carved out for the peculiar facts present in those cases and not in the one at bar.

Appellee contends that appellant's "conglomerate" argument is falacious given the fact that the practice in the liquor as well as the tobacco industry is to create a separate good will and image for a variety of different brands. We agree that appellant's argument is viable where a widely known arbitrary mark is being used for diversified products emanating from one source and a newcomer seeks to use the same mark on unrelated goods. Absent such circumstances the same argument was rejected in the *Dickel* case, supra, and in Con-Stan Industries, Inc. v. Villaamil Tobacco Products, Inc., 157 USPQ 397 (T.T.A.B. 1966). Appellant has not used the mark on diversified products, rather it has used different marks for its closely-related beverage products. Given the industry practice, we think that the ordinary consumer would not be conditioned to expect the same mark to be used on such unrelated products as cigars and tequila.

The decision of the board dismissing the opposition is affirmed.

Affirmed.