Application of E. I. DuPONT DeNEMOURS & CO. (Assignee of Horizon Industries Corporation).

Patent Appeal No. 8866.

United States Court of Customs and Patent Appeals.

May 3, 1973.

Eugene L. Grimm, Wilmington, Del., atty. of record, for appellant. Gerald A. Hapka, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

---

1. Serial No. 307,711, filed September 19, 1968.

2. Reg.No.675,713, issued March 17, 1959.

3. Serial No. 270,842, filed May 8, 1967.

MARKEY, Chief Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board, 166 USPQ 351 (1970), affirming a refusal to register DuPont's 'mark RALLY for a combination polishing, glazing and cleaning agent for use on automobiles [1] on the basis of likelihood of confusion under section 2(d) of the Lanham Act with Horizon's registered mark RALLY for an all-purpose detergent.[2] We reverse.

The application now before us was originally filed by Horizon. DuPont had earlier filed for registration of RALLY for a combination wax and cleaning agent for automobiles.[3] That application was refused in view of Horizon's registration. DuPont appealed and the board affirmed.[4]

While its appeal was pending, DuPont purchased Horizon's mark for the automobile product, the present application and the good will of that business. Because Horizon retained RALLY for all-purpose detergent, an agreement designed to avoid conflict was entered into on the same day. Boundaries of use of the marks were established, permitting the sale of products "incidentally usable" in the other party's market but prohibiting any promotion as "especially suited for use in such market." DuPont's realm was the "automotive aftermarket." Horizon's encompassed the "commercial building or household market."

The examiner, aware of the assignment and agreement, nonetheless refused registration, citing Horizon's registration and describing the issue as "ruled upon" in the board's earlier decision. The board affirmed, holding:

It is our opinion that despite any agreement between the parties the public interest cannot be ignored, and when the goods of the parties are as

4. Decision of Trademark Trial and Appeal Board, abstracted at 160 USPQ 830 (1968).

closely related as those here involved, their sale under the identical mark "RALLY" would be likely to result in confusion, mistake, or deception. cf. In re Avedis Zildjian Co., 157 U.S. p. 2517 [394 F.2d 860, 55 CCPA 1126] (CCPA, 1968); and In re Continental Baking Company, 156 U.S. p. 2514 [390 F.2d 747, 55 CCPA 967] (CCPA, 1968). * * * The mere fact that registrant may have precluded itself from selling an automobile cleaner under the mark "RALLY" does not overcome the likelihood of confusion as set forth in Section 2(d) of the Trademark Statute.

## OPINION

Our decision turns on the application of Sec. 2(d) to the facts before us. DuPont, having an unquestioned right to use, argues that the "right to register follows the right to use," particularly where the right on its goods is exclusive, Horizon having given up use of the mark in DuPont's market. The Patent Office solicitor denies such a broad relationship in the rights to use and register and emphasizes the duty of the Patent Office "to guard the public interest" against confusion.

Both parties have cited prior opinions of this court. We are thus presented with a welcomed opportunity to set forth a reliable guide for decision-making in cases involving Sec. 2(d). It need hardly be said that concepts expressed in our prior opinions and inconsistent with what we say here may be considered no longer viable in this court.

### The Statute

■ We begin with interpretation of the Lanham Act (Chapter 22, Title 15) as it applies here. The legislative history [5] of the Act as a whole describes its objectives as making registration "more liberal," dispensing with "mere technical prohibitions and arbitrary provisions" and modernizing the trademark statutes "so that they will conform to legitimate present-day business practice." The basic goal of the Act, which dealt with a good deal more than registration, was "the protection of trademarks, securing to the owner the good will of his business and protecting the public against spurious and falsely marked goods." [5] Accordingly, we consider the pre-Lanham Act decisions [6] presented here to be inapt.

Sec. 2 (15 U.S.C. § 1052), in pertinent part reads:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it

* * * * * *

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant to cause confusion, or to cause mistake or to deceive: * * *

■ Under the statute the Commissioner must refuse registration when convinced that confusion is likely because of concurrent use of the marks of an applicant and a prior user on their respective goods.

The phrase "on account of its nature" in Sec. 2 clearly applies to the "resembles" element of Sec. 2(d). But the question of confusion is related not to the *nature* of the mark but to its *effect* "when applied to the goods of the applicant." The only *relevant* application is made in the marketplace. The words

5. S.Rep.No.1333, 79th Cong., 2d Sess. (1946) in U.S.Code Cong.Service, 79th Cong., 2d Sess. at 1274–1278 (1946).

6. Skookum Packers Association v. Pacific Northwest Canning Co., 45 F.2d 912, 18 CCPA 792 (1930); Van Camp Sea Food Co., Inc. v. Westgate Sea Products Co., 48 F.2d 950, 18 CCPA 1311 (1931); Jacob Ries Bottling Works, Inc. v. The Coca-Cola Co., 138 F.2d 56, 31 CCPA 706 (1943).

"when applied" do not refer to a mental exercise, but to all of the known circumstances surrounding use of the mark.

### The Decisional Process

The ultimate question of the likelihood of consumer confusion has been termed a question of fact. *Coca-Cola Company v. Snow Crest Beverages, Inc.*, 162 F.2d 280 (1st Cir. 1947), cert. den. 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947). If labeled a mixed question or one of law, it is necessarily drawn from the probative facts in evidence. As so often said, each case must be decided on its own facts. There is no litmus rule which can provide a ready guide to all cases.

■ In testing for likelihood of confusion under Sec. 2(d), therefore, the following, when of record, must be considered:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i. e. "impulse" vs. careful, sophisticated purchasing.

(5) The fame of the prior mark (sales, advertising, length of use).

(6) The number and nature of similar marks in use on similar goods.

(7) The nature and extent of any actual confusion.

(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9) The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10) The market interface between applicant and the owner of a prior mark:

(a) a mere "consent" to register or use.

(b) agreement provisions designed to preclude confusion, i. e. limitations on continued use of the marks by each party.

(c) assignment of mark, application, registration and good will of the related business.

(d) laches and estoppel attributable to owner of prior mark and indicative of lack of confusion.

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion, i. e., whether *de minimis* or substantial.

(13) Any other established fact probative of the effect of use.

Where the Patent Office follows such process,[7] it is not abandoning its duty under Sec. 2(d) or allowing individuals to take the law into their own hands. Consideration of evidence emanating from the only place where confusion can occur, i. e. the marketplace, is not related to *who* decides but to the *process* of deciding.

The required inquiry, though more sweeping, is not unlike that provided for in Patent Office Rule 2.41 wherein the applicant is specifically invited to submit all evidence, including *letters from the trade or public*, tending to show that the mark, otherwise merely descriptive, distinguishes the goods.

The evidentiary elements are not listed above in *order of merit*. Each may

---

7.  See the decisions listed in "Appendix A" to Judge Smith's dissenting opinion in

In re Continental Baking Co., 390 F.2d 747 at 753, 55 CCPA 967 at 976.

from case to case play a dominant role. In Schenley Distillers, Inc. v. General Cigar Co., Inc., 427 F.2d 783, 57 CCPA 1213 (1970), and in McKesson & Robbins, Inc. v. P. Lorillard Co., 120 USPQ 306 (TTAB 1959), element (9) led to a finding that confusion was unlikely when the same mark was used on a beverage and a tobacco product. In John Walker & Sons, Limited v. Tampa Cigar Company, Inc., 124 F.Supp. 254 (S.D. Fla.1954), aff'd, 222 F.2d 460 (5th Cir. 1955) element (5) made confusion likely when the same mark was used on beverages and tobacco. See, also, Carling Brewing Company, Inc. v. Phillip Morris, Inc., 277 F.Supp. 326 (N.D.Ga.1967) and Geo. A. Dickel Co. v. Stephano Brothers, 155 USPQ 744 (TTAB 1967) involving beverages and tobacco.

■ We find no warrant, in the statute or elsewhere, for discarding *any* evidence bearing on the question of likelihood of confusion. Reasonable men may differ as to the *weight* to give specific evidentiary elements in a particular case. In one case it will indicate that confusion is unlikely; in the next it will not. In neither case is it helpful or necessary to inject broad maxims or references to "the public interest" which do not aid in deciding. Only the facts can do that. In every case turning on likelihood of confusion, it is the duty of the examiner, the board and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely. That determination ends the decisional process.

### Decision

Applying the above criteria, and after a thorough review of the entire record, we are convinced that confusion is not likely. The agreement and assignment herein constitute far more than mere "consent." They play, in this case, a dominant role.

The record of DuPont's original application, like so many, included only the application, specimens, reference mark and descriptions of goods. From these the examiner made a judgment, neces-sarily subjective and requiring assumptions. The only facts were identical marks on "related" goods. Confusion appeared likely and registration was refused.

The present application, however, was rejected without proper consideration, in our view, of all the evidence. The examiner said the earlier decision had "ruled upon" the issue and referred to the "public interest" as though likelihood of confusion were established. The board, also citing the public interest, found confusion likely "despite any agreement."

■ It has been said that agreement evidence may resolve "doubt," In re Harvey Aluminum (Inc.), 161 USPQ 366 (TTAB 1969) or may be useful when the issue is "debatable," In re Vim Corp., 161 USPQ 58 (TTAB 1969), but there are only two practical possibilities. Either there is no indication of likely confusion, in which case the registration promptly issues, or there is some indication that confusion may be likely. In the latter case, the question must *remain open* (i. e., "debatable") until any or all of the elements listed above have been reviewed and studied, the final decision being made on the basis of the entire record.

In considering agreements, a naked "consent" may carry little weight. Absent more, the consenter may continue or expand his use. The consent may be based on ignorance or misconception of the law. The facts may show, on the other hand, that consent could exist only in the absence of any real likelihood of confusion.

■ The weight to be given more detailed agreements of the type presented here should be substantial. It can be safely taken as fundamental that reputable businessmen-users of valuable trademarks have no interest in *causing* public confusion. The genius of the free competitive system is the paralleling of the interest of the entrepreneur and the consuming public so far as possible. Altruism aside, it is in his *pecuniary* interest,

indeed a matter of economic survival, that the businessman obtain and retain customers, the very purpose and function of a trademark, and that he avoid and preclude confusion. Millions of advertising dollars are spent daily for that precise purpose. The history of trademark litigation and the substantial body of law to which it relates demonstrate the businessman's alertness in seeking to enjoin confusion. In so doing he guards both his pocketbook and the public interest.

█ Thus when those most familiar with use in the marketplace and most interested in precluding confusion enter agreements designed to avoid it, the scales of evidence are clearly tilted. It is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't. A mere *assumption* that confusion is likely will rarely prevail against uncontroverted evidence from those on the firing line that it is not.

█ The parties here agreed to restrict themselves in effect to the general purpose cleaning market (Horizon) and the automobile market (DuPont). Horizon is subject to suit for breach of contract and infringement if it promotes its RALLY products for cleaning automobiles. DuPont can be sued if it promotes its RALLY products in general cleaning. The fact that the goods of one party "could be used" in the field of the other is too conjectural and too widely applicable to form the sole basis of decision, particularly where, as here, the parties have agreed to avoid the promotion of such cross-use.

The mere fact of diverse marketing emphasis alone may not in every case preclude confusion. Without more, it may well be that purchasers active in both markets and familiar with products sold under a particular mark could attribute to the same source closely related goods sold under the same mark. The agreements herein, however, considered as a whole and notwithstanding certain phrases subject to contrary interpreta-

tion, evidence that confusion will be unlikely. As we read them, the very purpose and aim of the present agreements is the avoidance of public confusion. Under provision 6 of the assignment the parties agreed "to take any further actions and execute any further agreements needed to carry out the spirit and intent of this agreement." The words of this court in a concurrent use proceeding, In re Beatrice Foods, Co., 429 F.2d 466, 57 CCPA 1302 (1970) are particularly apt:

> * * * there can be no better assurance of the absence of any likelihood of confusion, mistake or deception than the parties' promises to avoid any activity which might lead to such likelihood.

It is reasonable to conclude that experienced businessmen fully and continuously alert to each others' products, labels, trade channels and advertising and parties to the agreements before us, will be quick to act against confusion. We cannot believe that Horizon would have sold its automotive business, assigned its mark and entered into the agreement or that DuPont would have accepted and paid for the assignment and entered into the agreement, if either thought for a moment that purchasers would seriously be confused as to source. Dollars were at stake. Decisions of men who stand to lose if wrong are normally more reliable than those of examiners and judges.

We have no hesitancy in holding, therefore, under the facts of this case, that confusion is not likely to stem from concurrent use of RALLY by Horizon and DuPont on their respective goods under the terms of their agreement. Accordingly, the decision of the board must be *reversed.*

From all of the foregoing, it can be seen that the arguments presented in this and prior cases regarding the effect of a right to use and the need for protection of the public interest against confusion provide of themselves inadequate guides in determining likelihood of confusion under Sec. 2(d).

### Right to Use—Right to Register

■ Decisional maxims like "the right to register follows the right to use," sometimes defended as "reflecting the realities of the marketplace," founder on their non-universality of application and the existence of Sec. 2(d). As attractive as that approach appears in In re National Distillers Products Co., 297 F.2d 941, 49 CCPA 854 (1962) and in the dissents in Ultra-White Company, Inc. v. Johnson Chemical Industries, Inc., 465 F.2d 891, 59 CCPA — (1972), In re Avedis Zildjian Co., 394 F.2d 860, 55 CCPA 1126 (1968) and In re Continental Baking Co., 390 F.2d 747, 55 CCPA 967 (1968), it is recognized as a goal and that the phrase "as nearly as possible" must be read into it. Clearly, a right to use is not a right to confuse. The rights to use and register are not identical. Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc., 293 F.2d 685, 49 CCPA 730 (1961), cert. den., 369 U.S. 864, 82 S.Ct. 1030, 8 L. Ed.2d 84 (1962). Many marks, including those described in Sec. 2(a), (b), and (c), merely descriptive terms and those on labels defective under other laws (Rule 2.69), might all be used but not registered.

■ Although a naked right to use cannot always result in registration, the Act does intend, as we said above, that registration and use be coincident so far as possible. Post-Lanham Act opinions relating to Sec. 2(d) which maintain an iron curtain between the rights to use and register do not contribute to stability in the law. Treating those rights as totally divorced entities only perpetuates the "arbitrary provisions" respecting confusion that the Congress thought it was eliminating more than twenty-five years ago.

### The Public Interest

■ Whether offered in response to a right-to-use argument or against any of the evidentiary considerations listed above, citation of "the public interest" as a basis for refusal of registration is a bootless cry.[8] We need add little to the shattering of that shibboleth in the concurring opinion in *National Distillers, supra,* and in the dissents in *Ultra-White, Zildjian* and *Continental Baking, supra.* Writers and scholars listed in those reported opinions have also shown the fallacy in the notion that the Patent Office is somehow guarding the public against confusion when it refuses a registration. After a likelihood of confusion is found (and the case thus decided) citation of the public interest is unnecessary.

■ The Patent Office does have a guardianship role under Sec. 2(d). It lies not in a negative, nay-saying of refusal alone, but in the protection of a mark by registering it and then rejecting later improper attempts, of which the registrant is unaware, to register it or a similar mark. Refusal to register cannot prevent confusion. At most, it *might* discourage further use.[9] Refusal can, under certain circumstances, encourage potential confusion. Absence of a registration of RALLY for auto cleansers in the present case may, for example, lead others to adopt and use that or a similar mark for auto cleansers. Granting a registration will not produce confusion. Use alone can do that and neither we nor the Patent Office can grant or deny a right to use.

■ Presumably, everything the Patent Office and this court does is in the public interest. We find no place for "the guardianship of the public interest" as support for refusals to register under Sec. 2(d).

8. We are aware, of course, of our part in encouraging this very cry. In re Continental Baking Co., above.

9. That a rejected applicant might elect to abandon use, and thus reduce the potential for confusion, is a matter of the applicant's choice. Cf. Glenwood Laboratories, Inc. v. American Home Products Corp., 455 F.2d 1384, 59 CCPA — (1972).

*Conclusion*

What we have said under the heading "decisional process," supra, which has been in effect or in part followed on occasion in the past by this and other courts and by the Patent Office, and the elimination of considerations regarding right to use and the public interest should in time lead, we believe, to increased conformity of the register with the realities of use in the marketplace, and to the greater stability sought in the Act.

Reversed.

BALDWIN, J., dissents.