**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Mailed:
September 23, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re HerbalScience Group, LLC
_____

Serial No. 77519313
_____

Jennifer L. Whitelaw of Whitelaw Legal Group for
HerbalScience Group, LLC.

Tina H. Mai, Trademark Examining Attorney, Law Office 108
(Andrew Lawrence, Managing Attorney).
_____

Before Seeherman, Cataldo and Taylor, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

    HerbalScience Group, LLC has appealed from the final
refusal of the trademark examining attorney to register
MINDPOWER, in standard character format, for a wide variety
of goods in Class 1, identified, as ultimately amended, as
follows:[1]

_____

[1]  Initially applicant listed all of its "goods" as being in
Class 5, although the identification included goods and services
that belonged in other classes, and the original identification
covered almost five pages when printed.  There were several
amendments to the identification during the course of

Botanical extracts **for use in the manufacture** of nutraceuticals; plant extracts **for use in the manufacture** of pharmaceutical preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, tincture, suppositories and ampule for injection; botanical extracts **for use in the manufacture** of nutraceuticals and pharmaceuticals; chemical extracts and active principles extracted from medicinal plants **for use in the manufacture** of nutraceuticals and pharmaceuticals; chemical extracts and active principles extracted from medicinal plants for use in the pharmaceutical industry, namely, chemical agents made from botanical extracts or association of chemical extracts **for use in the manufacture** of pharmaceutical or nutraceutical products; botanical extracts used in preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, lozenges, inhalers, tincture, suppositories and ampule for injection; botanical extracts **for use in the manufacture** of preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, lozenges, inhalers, tincture, suppositories and ampule for

---

prosecution, e.g., applicant deleted the goods listed in Class 5 in order to overcome a likelihood of confusion refusal, and reclassified some of its previously identified goods and services in Classes 1, 29, 30 and 32. The examining attorney withdrew the refusal of registration based on one of the registrations that she had initially cited. Although ultimately applicant deleted the goods in Classes 29, 30 and 32, and deleted additional items from Class 1 in an unsuccessful attempt to overcome the refusal of registration based on the remaining cited registration, perhaps because of the extensive list of items in the original identification we note that the amended identification contained two duplicate items. We have updated Office records to eliminate these duplications.

injection; botanical extracts **used in the manufacture** of pharmaceutical preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, tincture, suppositories and ampule for injection; botanical extracts **for use in making** cosmetics; herbal extracts, botanical extracts, preparations, and blends, mushroom, fungus, or spore extracts or blends, **for use in the manufacture** of foods, functional foods, medicinal foods or beverages; herbal extracts and blends **for use in the manufacture** of medicinal foods or beverages; botanical extracts **for use in the manufacture** of pharmaceutical preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, tincture, suppositories and ampule for injection. (emphasis added)

The application, which was filed on July 10, 2008, is based on intent-to-use (Section 1(b) of the Trademark Act).

Registration has been refused pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that applicant's mark so resembles the mark MIND POWER RX, in standard character format, with MIND and RX disclaimed, registered for "dietary and nutritional supplements" that, if used on applicant's goods, it is likely to cause confusion or mistake or to deceive.

Both applicant and the examining attorney filed briefs. With its brief applicant has submitted new evidence, to which the examining attorney has objected.

The objection is well taken.  Trademark Rule 2.142(d)

provides that the record in the application should be

complete prior to the filing of an appeal.  Filing evidence

with an appeal brief is clearly untimely.  Applicant has

stated in its brief that "the Examining Attorney has raised

the new issue of the probative value of the newly cited

X-Search printouts and material obtained from the Internet,

Applicant is compelled to respond with the relevant

registrations set out below."  Brief, p. 13.  It appears

that applicant is asserting that because the examining

attorney submitted evidence as part of the Office action

denying applicant's request for reconsideration, applicant

is entitled to submit evidence in response.  That is not

correct.  See TBMP § 1204 (2d ed. rev. 2004):

> If the examining attorney, upon
> consideration of a request for
> reconsideration (made with or without
> new evidence), does not find the
> request persuasive, and issues a new
> final or nonfinal action, the examining
> attorney may submit therewith new
> evidence directed to the issue(s) for
> which reconsideration is sought.
> Unless the action is a nonfinal action,
> **the applicant may not submit additional
> evidence, even in response to evidence
> submitted by the examining attorney.**
> (emphasis added)

Applicant stated in its brief that it did not believe

that remand was required and that the appeal could go

4

forward, with the examining attorney considering the newly submitted evidence in her responsive brief. What applicant proposes is contrary to normal practice; in effect, applicant would treat briefing as merely a continuation of examination.[2] Applicant also argued that if the Board "feels that the Examining Attorney, for some reason, cannot address the issue [the newly submitted evidence] in the Examiner's Reply Brief, Applicant would then respectfully requests [sic] that the application be remanded for ex-parte consideration under TMEP [sic] 1207.02, 37 C.F.R § 2.142(d)." Brief, p. 13.

This request is denied. First, we point out that a request for remand should be filed by a separate paper, appropriately captioned "Request for Remand," rather than by a request buried within a paragraph in the middle of a brief. The Board does not read appeal briefs prior to final decision, and therefore a request that is included within a brief will normally not be noted. More importantly, applicant has not supported its request for remand by a showing of good cause. See TBMP § 1207.02. Applicant has not provided a valid reason why it could not

---

[2] We recognize that there are occasions when a valid request for remand is submitted very late in the appeal process, such as after main briefs have been filed, and the Board allows the applicant and the examining attorney to include evidence with supplemental briefs. That situation is very rare, however.

have submitted the third-party registrations it seeks to make of record (to show that consumers can distinguish marks based on the presence or absence of an RX symbol) during the prosecution of its application. We note that with the final Office action the examining attorney submitted a substantial amount of evidence (143 pages of attachments) consisting of third-party registrations and Internet excerpts. Applicant was certainly aware of this material when it submitted its request for reconsideration, and chose not to submit any evidence itself, limiting its request to deleting goods from its identification in an attempt to overcome the refusal.

Accordingly, the untimely exhibits attached to applicant's brief, as well as the arguments based on such evidence, have not been considered.

Turning now to the substantive issue before us on appeal, our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

6

With respect to the du Pont factor of the similarity of the goods, the examining attorney has submitted a significant number of third-party registrations showing that many entities have adopted a single mark for use on goods of the type listed in applicant's application and in the cited registration.[3] See for example, Registration No. 3431941 (botanical extracts, including pomegranate extracts, for use in the preparation of pharmaceutical products and preparations, as well as food, dietary and nutritional supplements derived from and containing pomegranate extracts and plant extracts); Registration No. 3599419 (antioxidants and proteins used in the manufacture of cosmetics, beverages, food products and food supplements, as well as food supplements); Registration No. 3080354 (grape seed extracts for use in the manufacture of medical and dietary supplements and foodstuffs, as well as dietary supplements); and Registration No. 2459910

---

[3] Some of the registrations made of record by the examining attorney have little or no probative value because, for example, they are for house marks (see Reg. No. 2344539 for 22 classes of goods and services), or the relevant classes have been deleted from the registration (see Reg. No. 2582602, in which Class 1 was cancelled pursuant to Section 8), or are not for relevant goods (see Reg. 3360704--the Class 1 goods are fertilizers for agricultural uses). We have not given these registrations any weight, but even excluding these registrations there are still a large number of third-party registrations which support the examining attorney's position that applicant's and the registrant's identified goods are related.

(chemicals used in the manufacture of nutritional supplements, as well as nutritional supplements). These third-party registrations, which individually cover a number of different items and which are based on use in commerce, serve to suggest that the listed goods and/or services are of a type which may emanate from a single source. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993).

Applicant does not dispute that its identified goods and those of the registrant can emanate from a single source under a single mark. In fact, applicant originally included nutritional supplements and dietary supplement drinks in its identification of goods. What applicant does dispute is the effect of the du Pont factor of the channels of trade and classes of purchasers. Essentially applicant argues that there can be no confusion because the purchasers of dietary and nutritional supplements would never encounter applicant's goods; that its goods are sold to manufacturers of medicinal, pharmaceutical, herbal and food products, while the registrant's goods would be sold in such venues as drug stores and health food stores.

In response to this argument the examining attorney states that, because the identification in the cited registration, dietary and nutritional supplements, is not

8

restricted as to the channels of trade, they "could be sold to the same herbal product manufacturers as are applicant's goods." Brief, p. 7. The examining attorney cites to case law standing for the principle that, if an identification describes the goods without any limitation as to trade channels, it is presumed that the goods move in all normal channels of trade for those goods. We, of course, agree with the principle, but point out that the presumption is that the goods move in all normal channels of trade **for those goods.** There is nothing in this record to show that a normal channel of trade for dietary and nutritional supplements is that they are sold to the companies that would purchase applicant's identified goods. As shown by the identification of applicant's goods, they are for use in the manufacture of pharmaceuticals, nutraceuticals, cosmetics and the like.[4] Thus, because of the very nature of the identification, we must presume that applicant's goods will be sold to manufacturers of nutraceuticals, pharmaceuticals, and the like.

---

[4] As we have highlighted in our recital of the identification, virtually all of the items state that they are for use "in the manufacture of" or "for use in making…." The only item that does not include these words is "botanical extracts used in preparations in the form of lotions, creams, and topical analgesics and anesthetics, tablets, capsules, pills, lozenges, inhalers, tincture, suppositories and ampule for injection." However, it is clear from the identification that the botanical extracts are used in manufacturing other products.

The examining attorney has stated that applicant has not provided any evidence that its customers are manufacturers of medical, pharmaceutical, herbal and food products, but again, its very identification, i.e., that the goods are for the "manufacture" of nutraceuticals, pharmaceuticals, cosmetics and food, supports this limitation. If the examining attorney wished to contend that such botanical and chemical products used in the manufacturing of finished products are purchased by the general public, it was her burden to prove this.

The examining attorney also takes issue with applicant's characterization of its customers as "sophisticated purchasers," stating that applicant failed to provide any evidence about these purchasers. Again, however, applicant's identification of goods is sufficient to show that its goods would be sold to manufacturers of pharmaceuticals, nutraceuticals and the like. The buyers of such goods, who would be using these ingredients for the products that they make and sell, must be assumed to be knowledgeable and careful purchasers. Although we agree with the examining attorney (and applicant) that the registrant's products can be purchased by ordinary consumers on impulse, because such purchasers would have no knowledge of the applicant's goods and mark, they would not

10

choose the registrant's product because they had confused the source of the product with applicant.

Because of the differences in the channels of trade and customers for applicant's and the registrant's goods, there is virtually no opportunity for confusion to arise. Accordingly, we need not consider the du Pont factor of the similarities of the marks, the only other factor discussed by applicant and the examining attorney, and presumably the only other factor that either believed to be relevant. See In re E.I. du Pont de Nemours & Co., 476 F.2d at 1362, 177 USPQ at 567 ("each [of the thirteen factors] may from case to case play a dominant role"); and Kellogg Co. v. Pack'em Enterprises Inc., 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991) (we know of no reason why, in a particular case, a single *duPont* factor may not be dispositive"). We find, based on the record before us, that there is no evidence of overlap between the channels of trade for and purchasers of applicant's and registrant's products. Accordingly, the examining attorney has failed to prove that applicant's mark, if used for its identified goods, is likely to cause confusion with the cited registration.

Decision:  The refusal of registration is reversed.