NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SKY INTERNATIONAL AG,**
*Appellant*

**v.**

**SKY CINEMAS LLC,**
*Appellee*

_____

2021-1575

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91223952.

_____

Decided:  December 17, 2021

_____

JACQUELINE LESSER, Baker & Hostetler LLP, Philadelphia, PA, argued for appellant.  Also represented by LISA BOLLINGER GEHMAN; MARK HARRELL TIDMAN, Washington, DC.

BAXTER W. BANOWSKY, Banowsky & Levine PC, Dallas, TX, argued for appellee.

_____

Before TARANTO, BRYSON, and STOLL, *Circuit Judges*.

BRYSON, *Circuit Judge.*

Appellant Sky International AG opposed a trademark application filed by appellee Sky Cinemas LLC due to Sky International's prior registration of several similar marks. The Trademark Trial and Appeal Board found in favor of Sky Cinemas on the opposition, finding no likelihood of confusion between Sky International's marks and Sky Cinema's mark. We affirm.

I

In 2014, Sky Cinemas filed an application to register the mark SKY CINEMAS for "movie theaters." Several months later, Sky International opposed the registration of the SKY CINEMAS mark, claiming a likelihood of confusion with several of Sky International's marks containing the word "SKY."[1] In its counterclaims, Sky Cinemas asserted that several of Sky International's pleaded registrations were filed without a bona fide intent to use. Sky Cinemas later alleged that some of Sky International's marks had been abandoned through non-use. Sky International replied in part by limiting its pleaded registrations to cover only the goods and services for which there was actual use.

On July 21, 2020, the Board ruled on Sky International's claims, finding that there was no likelihood of confusion between Sky Cinemas' mark and Sky International's U.S. registrations. The Board therefore allowed Sky Cinemas' application to move forward. J.A. 80. The Board elected not to rule on Sky Cinemas' counterclaims at that time, but instead directed Sky Cinemas to elect whether it wished to pursue the remaining counterclaims. *Id.*

---

[1] A full list of Sky International's pleaded registrations can be found at J.A. 26–27.

Sky Cinemas indicated that it wished to pursue the counterclaims. As a result, in an order issued on November 19, 2020, the Board significantly reduced the scope of Sky's registrations. *Sky Int'l AG v. Sky Cinemas LLC*, No. 91223952, 2020 WL 6887759, at *9–11 (T.T.A.B. Nov. 19, 2020).

In its July 2020 order analyzing Sky International's likelihood-of-confusion claim, the Board focused its analysis on two of Sky International's marks, which we refer to as the "standard character registrations":

- SKY NEWS for "broadcasting and transmission of news programmes by satellite, television, and radio" and "news agency services, namely, gathering and dissemination of news; news reporting services" (Registration No. 2932761); and

- SKY NEWS for "television and radio news reporting services; production of radio and television news programmes" (Registration No. 2912783).

J.A. 38. The Board focused its review on those two marks because it concluded that they were "more similar to [Sky Cinemas'] mark SKY CINEMAS" than Sky International's other marks. *Id.* The Board noted that because those two registrations were standard character marks, they were "devoid of potentially distinguishing graphical elements." *Id.* Additionally, the Board found that "the recitation of services [in the standard character registrations] is no less similar to [Sky Cinemas'] services than the services in any of the other pleaded registrations." J.A. 39.[2]

---

[2]    The standard character registrations were not included in Sky Cinemas' counterclaims for lack of bona

The Board conducted its likelihood-of-confusion analysis using the *DuPont* factors that the Board traditionally uses when addressing whether a likelihood of confusion exists. *See In re E.I. DuPont De Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). In evaluating those factors, the Board found that the marks are "more similar than they are dissimilar," and that "the classes of consumers are the same." J.A. 80. The Board also found, however, that "the services are not related, nor are they offered through the same trade channels," and that Sky International has not shown that Sky Cinemas' movie theaters are within Sky International's "natural area of expansion." *Id.* The Board determined that, on balance, the factors indicated that Sky Cinemas' mark "was not likely to cause confusion" with Sky International's registrations. *Id.*

## II

Sky International raises three issues on appeal. First, Sky International argues that the Board impermissibly bifurcated the proceedings before it when it decided Sky International's claim before deciding Sky Cinemas' counterclaims. Second, Sky International argues that the Board erred in considering only the standard character registrations in its likelihood-of-confusion analysis. Third, Sky International argues that the Board's finding that movie theaters are outside of Sky International's natural zone of expansion is unsupported by substantial evidence.

## A

With respect to Sky International's claim that the Board impermissibly bifurcated the case, we disagree with the premise that the case was bifurcated. And in any event, the Board's choice to consider the counterclaims

---

fide intent to use and non-use abandonment. *See Sky Int'l*, 2020 WL 6887759, at *1.

separately from the opposition was not the source of the prejudice that Sky International alleges it suffered from the Board's treatment of the case.

In cases that are bifurcated, courts or agencies typically complete the proceedings as to one issue before moving on to address a second issue in the case. *See, e.g.*, *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013) (hearing an appeal on patent infringement while damages discovery and trial were yet to occur); *AT&T Mobility LLC v. Thomann*, No. 91218108, 2020 WL 730362, at *3 (T.T.A.B. Feb. 10, 2020) (allowing for discovery and trial on standing and then, if necessary, discovery and trial on other issues). Here, by contrast, all of the evidence on both Sky International's claims and Sky Cinemas' counterclaims was before the Board at the time it issued its July order. Moreover, the Board addressed the counterclaims in its July order to the extent that those counterclaims were resolved by Sky International's adjustments to its recitations of goods and services. *See* J.A. 37–38 (ruling in part on the counterclaims); J.A. 5780–5896 (briefing on both the opposition and the counterclaims). Disposition of the remaining counterclaim issues was simply postponed until the November order. Because the Board merely addressed the issues in two different orders, this case was not bifurcated as that term is normally understood.

Sky International argues that the Board erred by "expressly limit[ing] its review and analysis" to the two standard character registrations. Appellant's Br. 12. Sky International suggests that a statement made by the Board after it issued its July order indicates that the Board did not review the full record when it considered whether a likelihood of confusion existed. Specifically, before ruling on Sky Cinemas' counterclaims the Board instructed the parties to cite to specific evidence supporting each allegation of use or non-use and noted that it would "not attempt to guess which piece of evidence supports which

allegation." J.A. 5995. Sky International asserts that "[h]ad the Board reviewed the complete record, it would have concluded that the record supported a likelihood of confusion." Appellant's Br. 15. However, the Board's statements appear to be limited to the issue of use, and we see nothing to suggest that the Board did not consider the entire record when assessing the likelihood-of-confusion issue.

The Board's decision to rule on Sky Cinemas' counterclaims separately from the opposition thus did not prejudice Sky International. The real claim of prejudice that Sky International asserts appears to be that the Board should have focused on a third registration in its likelihood of confusion analysis, and that if the Board had done so, it might have reached a different result. *See* Appellant's Br. 13–14. We address that claim in the following section.

B

In challenging the Board's finding as to the likelihood of confusion, Sky International argues that, in addition to the two Sky International registrations the Board considered, the Board should have considered Registration No. 4771128 ("the '128 Registration") for sky NEWS. We agree that the Board should have considered the '128 Registration, but we conclude that the error was harmless.

The '128 Registration recites many services, including:

- "broadcasting and/or transmission of radio and/or television programs and/or films";

- "streaming delivery of video on demand streams to viewers"; and

- "production and distribution of sports, news, entertainment videos."

*Sky Int'l*, 2020 WL 6887759, at *11–12.[3]  The Board chose not to focus on the '128 Registration in evaluating the likelihood of confusion for two reasons: (1) because the '128 Registration contained "potentially distinguishing graphical elements," and (2) because the recitations of services for the standard character registrations were "no less similar than" that for the '128 Registration.  J.A. 38–39.

The Board was incorrect to conclude that the services in the standard character registrations were "no less similar" than those in the '128 Registration.  *See* J.A. 39. The standard character registrations are directed mainly at broadcasting, reporting, and dissemination of news.  The '128 Registration, by contrast, covers services that include broadcasting, production, and distribution of films, as well as video streaming services.  Production and distribution of films are services that have more in common with operating movie theaters than do news reporting and dissemination.  The Board therefore should not have disregarded the '128 Registration on the ground that the services set forth in the two block letter registrations were "no less similar" to operating movie theaters than those in the '128 Registration.  *See id.*

That error was harmless, however, in light of the Board's evaluation of whether movie theaters were within Sky International's natural zone of expansion.  The Board's analysis of that question focused heavily on whether movie

---

[3]    A full recitation of the services covered by the '128 Registration can be found at *Sky Int'l*, 2020 WL 6887759, at *11–12.  The parties agree that those services, which remained in the '128 Registration after the Board's November order, are the operative services for purposes of this appeal.  *See* Oral Argument at 3:05–6:04, 24:47–25:28, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21 -1575_12092021.mp3.

theaters would be in the natural zone of expansion of a company that engages in "motion picture production and distribution." *See* J.A. 70–74. The standard character registrations do not recite any services that can be read to include motion picture production or distribution. Those services, however, are present in the '128 Registration. In other words, the Board considered the services recited in the '128 Registration when it evaluated whether Sky International's natural zone of expansion includes movie theaters, despite its statement that it was only considering the standard character registrations.

As a general matter, the "natural zone of expansion" doctrine grants a senior user of a mark superior rights as to "any goods or services which purchasers might reasonably expect to emanate from it in the normal expansion of its business under the mark." *Mason Eng'g & Design Corp. v. Mateson Chem. Corp.*, 225 U.S.P.Q. 956, 962 (T.T.A.B. 1985).

The Board found that operating movie theaters was not within Sky International's natural zone of expansion. As discussed below, that finding is supported by substantial evidence. Because the Board found that operating movie theaters would not be within the natural zone of expansion for a company that produces and distributes films, it would have been illogical for the Board to conclude that the film production and distribution services listed in the '128 Registration are similar to operating movie theaters for purposes of the likelihood-of-confusion analysis. The Board's error in failing to consider the '128 Registration on the likelihood-of-confusion issue is therefore harmless.[4]

---

[4] We reach this conclusion without considering the impact of the potentially distinguishing visual characteristics of the mark in the '128 Registration. We note, however, that if the Board had explicitly considered

C

Sky International's final argument is that the Board's finding as to the natural zone of expansion for Sky International's services was unsupported by substantial evidence. We disagree.

Sky International first contends that the Board incorrectly applied a timing requirement in its analysis of Sky International's natural zone of expansion. The determination of a natural zone of expansion must be "made on the basis of circumstances prevailing at the time when the subsequent user first began to do business under its mark." *Mason*, 225 U.S.P.Q. at 962. Sky International argues that the Board erred by requiring "evidence of a consumer expectation of . . . expansion by the date of [Sky Cinemas'] filing." Appellant's Br. 26. But the Board adopted no such requirement. To the contrary, the Board specifically found that "[e]ven if we measure from the time of [Sky Cinemas'] actual opening of its theaters in January 2018, rather than [the application filing date], the result would be the same." J.A. 69. The Board therefore did not commit an error with regard to the time period for its natural zone of expansion analysis.

Sky International next argues that in view of the record evidence the Board should have concluded that movie theaters were within Sky International's natural zone of expansion. The Board evaluated the likelihood that Sky International could "bridge the gap" between its services and the operation of movie theaters in view of four factors:

---

the '128 Registration, the stylized nature of that mark, as compared to the standard character registrations, may have cut against Sky International with regard to the similarity of the marks.

- "Whether the operation of movie theaters is a distinct departure from those services Sky International has performed under its marks";

- "Whether the nature and purpose of movie theaters and movie/film production are similar";

- "Whether the channels of trade and classes of customers for the two areas of business are the same"; and

- "Whether other companies have expanded from one area to the other."

J.A. 70–73 (adapting the factors from *Mason*, 225 U.S.P.Q.2d at 962).

As to the first factor, the Board found that "a motion picture production company" would be unlikely to "go into the business of operating a movie theater without significant new technology or know-how." J.A. 70. Sky International appears to suggest that because modern movie theaters "show films without projectors, using digital content that is streamed onto screens," Sky International has the basic know-how to operate a movie theater. Appellant's Br. 29, 31–32. Sky Cinemas, however, presented evidence that Sky International's services do not "employ[] any digital projection technology at all." Appellee's Br. 35. Sky Cinemas also pointed to numerous services involved in operating a movie theater that Sky International does not offer, such as "food and beverage services," "large auditoriums with luxury seating," and "wall-to-wall curved screens." *Id.* Substantial evidence supports the Board's finding on that factor.

As to the second factor, the Board found that "while the purpose of each company's services is similar, the nature of each is dissimilar." J.A. 71. Specifically, the Board observed that "production, distribution, and exhibition are

different phases in the process of creating and bringing content" to customers, and therefore "the point at which each company links into the distribution channel differs." *Id.* Sky Cinemas points to record evidence suggesting that "film distributors license films to movie theaters to exhibit" and that "theaters offer a 'night out' experience" different from that offered by streaming services. Appellee's Br. 36; *see also* J.A. 3862, 3869. The Board's finding as to the second factor is likewise supported by substantial evidence.

As to the third factor, the Board found that there is an overlap of customers and direct competition between Sky Cinemas' and Sky International's services. The Board thus found that factor weighed in Sky International's favor.

As to the fourth factor, the Board found that "there is no record evidence showing that companies that produce films or distribute films over users' personal devices have expanded to owning or running movie theaters." J.A. 73–74. The only evidence relevant to this factor that Sky offers on appeal is that Sky International has movie theater facilities in the United Kingdom. Appellant's Br. 29; *see also* J.A. 2604, 3506–3507, 5909. The Board excluded evidence of Sky International's use outside the United States, however, and Sky International does not challenge that exclusion on appeal. J.A. 26 n.2.

Sky International cites two TTAB cases in which the Board found a likelihood of confusion to exist for types of services generally similar to those at issue here. *See In re Live Nation Worldwide, Inc.*, No. 87240723, 2018 WL 2357291, at *1–2 (T.T.A.B. May 9, 2018); *In re Olympia Ent., Inc.*, No. 76277821, 2008 WL 885951, at *5–7 (T.T.A.B. Mar. 28, 2008). Both of those cases are distinguishable from this case, however.

In *Live Nation*, the Board found "live entertainment events" services to be confusingly similar to services under a registered mark for "motion picture theaters." 2018 WL 2357291, at *1–2. In that case, the evidence showed that

movie theaters host live entertainment events in the same venue, which demonstrated to the Board that confusion as to the source of the respective services was likely. *Id.* at *3. Here, by contrast, Sky International has not demonstrated that businesses offering news reporting, film production, or video streaming services also operate movie theaters.

In *Olympia*, the Board found an application for live entertainment productions such as "plays, musicals, . . . [and] concerts" to be confusingly similar to a registrant's series of marks including services such as "entertainment services in the nature of live musical, dramatic and comedic performances." 2008 WL 885951, at *5–7. The registrant also owned marks for production and distribution of movies, as in this case, but the Board's decision rested primarily on the fact that "essentially identical" services (musical and dramatic performances) were claimed in both the application and the issued registration. *See id.* at *5.

We therefore hold that substantial evidence supports the Board's finding that operating movie theaters is not within Sky International's natural zone of expansion. And because the Board's natural zone of expansion analysis is supported by substantial evidence, we hold that the Board's failure to explicitly consider the '128 Registration was harmless error. We therefore uphold the Board's rejection of Sky International's opposition to Sky Cinemas' application.

**AFFIRMED**