NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CHATEAU LYNCH-BAGES,**
*Appellant*

**v.**

**CHATEAU ANGELUS S.A.,**
*Appellee*

_____

2024-1197

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91268431.

_____

Decided:  June 13, 2025

_____

MICHAEL STEVEN CULVER, Millen, White, Zelano & Branigan PC, Arlington, VA, argued for appellant.

DAVID C. BREZINA, Ladas & Parry LLP, Chicago, IL, argued for appellee.  Also represented by JOHN EGBERT, Egbert, McDaniel & Swartz PLLC, Houston, TX.

_____

Before MOORE, *Chief Judge*, CUNNINGHAM, *Circuit Judge*, and SCARSI, *District Judge*.[1]

SCARSI, *District Judge*.

Appellant Chateau Lynch-Bages ("Opposer") appeals from a Trademark Trial and Appeal Board ("Board") decision partially dismissing its opposition to a trademark application filed by Appellee Chateau Angelus S.A. ("Applicant"). The Board determined that there was no likelihood of confusion between Applicant's mark, "ECHO D'ANGÉLUS," and Opposer's mark, "ECHO DE LYNCH BAGES." For the reasons below, we vacate the Board's ruling and remand for further proceedings consistent with this opinion.

## BACKGROUND

Opposer asked the Board to deny an application seeking to register the mark "ECHO D'ANGÉLUS," claiming that the proposed mark was likely to cause confusion with Opposer's mark, "ECHO DE LYNCH BAGES." Appx. 34, 36–37. The Board dismissed the opposition in part, finding that there was no likelihood of confusion as to the use of Applicant's mark with certain classes of goods. Appx. 12–27.

In its analysis, the Board considered the relevant factors outlined in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973) ("*DuPont* factors"). Appx. 13–26. First, the Board found that the similarity of the goods described in both Opposer's registration and Applicant's application weighed in favor of a finding of likelihood of confusion. *Id.* at 14–15. Second, the Board concluded that the identical goods at issue, wine, "are presumed to move

---

[1] The Honorable Mark C. Scarsi, District Judge, United States District Court for the Central District of California, sitting by designation.

in the same channels of trade to the same classes of consumers," such that "the parties' trade channels and classes of customers are the same." *Id.* at 15–16.  Third, the Board determined that the degree of purchaser care was neutral. *Id.* at 16–17.  And fourth, based on Applicant's submission of third-party registrations that included the term "ECHO," the Board ruled that "ECHO" is "a fairly commonly-chosen term in the field," which "weighs somewhat against finding that confusion is likely."  *Id.* at 17–19.

With two factors weighing in favor of confusion, one factor neutral, and one factor weighing "somewhat" against confusion, the Board then considered the similarities of the marks, which the Board correctly noted was "one of the most important considerations."  *Id.* at 20.  The Board analyzed each mark as a "unitary expression" and found that the term "ECHO" did not dominate either mark.  *Id.* at 22.  Instead, the Board placed substantial weight on the terms "ANGÉLUS" and "LYNCH BAGES."  *Id.*  While neither party appeared to argue that the subject marks included house marks, the Board nevertheless opined that "[i]t appears that ANGÉLUS and LYNCH BAGES are the parties' 'house marks.'"  *Id.*

In support of this finding, the Board noted that Applicant owned four registrations that included the term "ANGELUS," and that Opposer's name and its letterhead contained the phrase "LYNCH BAGES."  *Id.*  Based on this, the Board "assess[ed] the effect of house marks" in evaluating the similarity of the marks.  *Id.* at 22–25.  Indeed, the bulk of the Board's similarity analysis consisted of evaluating case law to determine how much weight to place on the presence of the supposed house marks.  Ultimately, the Board found that "ECHO" had "some conceptual weakness in connection with the goods at issue," and that "the use of ECHO with D' and DE followed by the parties' house marks contributes significantly to the overall commercial impressions of the marks as invoking the respective house marks."  *Id.* at 25–26.  Because the common term between

the marks was "somewhat weak," the Board concluded that "the dissimilarities outweigh[ed] the similarities in the respective marks" given that the marks "incorporate[d] different-appearing house marks as part of unitary expressions." *Id.* at 26. Weighing all the factors "in light of all the evidence," the Board found the dissimilarities in the marks to be a "predominant" factor, and "the overall balance of factors weigh[ed] against likely confusion." *Id.* at 26–27.

Opposer then filed the present appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## STANDARD OF REVIEW

A mark may be denied registration under Section 2(d) of the Lanham Act if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with an already registered mark. 15 U.S.C. § 1052(d). Likelihood of confusion is a legal determination based on factual findings relating to the *DuPont* factors. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1084 (Fed. Cir. 2000). We review the Board's factual findings for substantial evidence, and we review the ultimate weighing of the *DuPont* factors de novo. *QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018) (internal quotation marks omitted).

## DISCUSSION

On appeal, Opposer argues that the "Board erred in determining that each of the subject marks contained a house mark" because such a finding lacked substantial evidence. Appellant's Br. 4, 15–17. In Opposer's view, this "erroneous determination" warrants reversal and remand. *Id.* at 4, 25. We agree remand is appropriate, and conclude that the Board's similarity analysis was flawed because its

finding that the marks contained each party's house mark was not supported by substantial evidence. *See Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 998 (Fed. Cir. 2020) ("[W]e evaluate whether the Board's factual findings for each considered *DuPont* factor are supported by substantial evidence.").

In considering the similarity of the marks, the Board declined to place an emphasis on the common term "ECHO" because it believed that the marks were unitary expressions not dominated by this term.[2]  Appx. 21–22. Therefore, the Board's analysis primarily revolved around comparing the terms "ANGÉLUS" and "LYNCH BAGES." Here, rather than simply concluding that the substantial differences in the sound, appearance, and commercial impression of these terms rendered the marks dissimilar, *see In re i.am.symbolic, llc*, 866 F.3d 1315, 1323 (Fed. Cir. 2017), the Board opted to find that the terms "appear" to be the parties' house marks.  Appx. 22.

"The term 'house mark' refers to a trademark that is used throughout the commercial operations of the trademark owner."  1 Anne Gilson LaLonde, GILSON ON TRADEMARKS § 1.02[1][e] (Dec. 2024).  Typically, parties apply for the registration of a house mark and must provide evidence showing the broad use of the mark, as well as the mark's use in commerce.  *See* Trademark Manual of Examining Procedure § 1402.03(b) (Nov. 2024).  Therefore, the Board must first find substantial evidence of a mark's use in commerce before determining that it is a house mark in the context of the *DuPont* factors.

---

[2]    Opposer argues that the Board also erred in considering the marks as unitary expressions, but we do not expressly address this issue because it is unclear to what extent the house mark findings informed the Board's decision to view the marks as unitary expressions.

There was limited evidence of such commercial use before the Board. As a preliminary matter, the record does not suggest that either party argued that the subject marks contained house marks. Instead, the Board made this observation based on its own investigation. Regarding "ANGÉLUS," the Board noted that four of Applicant's other registrations contain variations of the term. Appx. 22. The Board did not cite any authority supporting the proposition that merely owning multiple registrations with a common term renders that term a house mark. Nor did the Board find that these marks had a "broad use" or were used in commerce. The evidence that "LYNCH BAGES" was Opposer's house mark was even more sparse. The Board dedicated a single sentence to the analysis, noting that Opposer's name is "Chateau Lynch Bages"—imprecisely omitting a hyphen—and that its letterhead used "LYNCH BAGES." *Id.* The Board provided no further analysis, law, or citations to the record to support its finding. *Id.*

If that were the extent of the Board's discussion of house marks, perhaps the error would be harmless. However, the Board appeared to place great weight on its findings. Indeed, the Board expressly "assess[ed] the effect of house marks" on the similarity factor. *Id.* at 23. But, even here the Board's analysis was unclear, as its survey of the case law resulted in a conclusion that "none of [its] precedents" governed the situation that it concocted itself: where the competing marks supposedly contained both a shared word and each party's house mark. *Id.* at 24–25.

After this underdeveloped house mark analysis, the Board considered the similarities of the two marks. It acknowledged that the identical term "ECHO" contributes to a finding of similarity, but that the "remainder of the marks are visually and aurally different." *Id.* at 25. Again, if the Board had arrived at this conclusion without the house mark discussion, its analysis may have been sound. However, it opined, "ECHO with D' and DE followed by the

parties' house marks contributes significantly to the overall commercial impressions of the marks as invoking the respective house marks." *Id.* at 25–26. And, because the Board considered "ECHO" weak, the Board reasoned that the marks were dissimilar given that they "incorporate different appearing house marks." *Id.* at 26. The house mark findings were critical in the Board's analysis and nearly dispositive to its conclusion that the marks were not similar.

Applicant does not attempt to justify the Board's house mark findings. Instead, Applicant simply states that "the 'house' marks are the 'main' components" in each mark. Appellee's Br. 7–8. However, Applicant fails to engage with the relevant issue as to whether there was substantial evidence to determine that the marks contained house marks at all. Indeed, if there had been such evidence or argument, we agree that the Board would have had discretion to consider the prominence of the house marks in its similarity analysis. But that was not the case.

For the reasons above, the Board's determination that the competing marks contained house marks was erroneous, and because this finding was critical in the Board's similarity analysis, the conclusion of dissimilarity lacked substantial evidence. Moreover, since the Board gave "predominant" weight to the similarity factor in its *DuPont* analysis, it is not clear whether the Board would have arrived at the same conclusion of no likelihood of confusion absent this error.

### CONCLUSION

For the foregoing reasons, we vacate the Board's decision and remand the case for additional proceedings consistent with this opinion.

**VACATED AND REMANDED**

8          CHATEAU LYNCH-BAGES v. CHATEAU ANGELUS S.A.

COSTS

Costs to Opposer.