THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
February 17, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Kent G. Anderson
_____

Serial No. 76511652
Serial No. 76514799
_____

Dwayne L Bentley of DL Bentley ALW Group PLLC for Kent G.
Anderson.[1]

Howard Smiga, Trademark Examining Attorney on Serial No.
76511652; Kelly F. Boulton, Trademark Examining Attorney on
Serial No. 76514799, both of Law Office 102 (Karen M. Strzyz,
Managing Attorney).

_____

Before Seeherman, Ritchie and Lykos, Administrative Trademark
Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Kent G. Anderson ("applicant") filed an application to

register the mark FUTURE, as shown below, for hundreds of goods

and services in International Classes 3, 12, and 35[2]:

_____

[1] Mr. Anderson represents himself *pro se* on brief in application Serial
No. 76511652.  However, he submitted as an exhibit with that brief,
the brief submitted by his attorney, Mr. Bentley, from his companion
application Serial No. 76514799.  He also noted in his brief that he
"Used attorney's previous work for format and not limited to reference
of evidence."  (appl's brief on 76511652 at 3).
[2] Serial No. 76511652, filed May 5, 2003, pursuant to Section 1(b) of
the Trademark Act, 15 U.S.C. § 1051(b), in all classes, alleging a
bona fide intent to use the mark in commerce.

Serial No. 76511652
Serial No. 76514799

# *FUTURE*

The trademark examining attorney refused registration of the mark for all of the goods identified in International Class 12, and some of the services identified in International Class 35, under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), on the ground of likelihood of confusion, citing registrations owned by the same entity for the mark FUTURA, in typed drawing format, for "tires,"[3] and for "automotive accessories, namely, vehicle wheel caps and hub caps."[4]  The goods and services for which the mark is refused are as follows:

International Class 12[5]: Vehicles, namely cars; apparatus for locomotion by land, air, water, space, namely automobiles, trucks, vans, sport utility vehicles, aircrafts, water crafts, space craft and their structural parts thereof; motorcycles, scooters, mini bikes, go-cars, locomotive, garbage hauling trucks, semi tractor trailers, and their structural parts and engines; buses, recreational vehicles, all terrain vehicles and ambulances; vehicles operate by gas, electric, fuel or other source of power, namely, snowmobiles, tractors, and trolleys; accessories for trucks, namely truck liners, tow bars, transmissions, travel trailers, turn signals, universal joints, van conversions, dipstick, mirrors, velocity joint, suspension struts, ball joint, idle arms, sun visors, windshield visors,

---

[3] Registration No. 1582462, issued February 13, 1990, in International Class 12.  Sections 8 and 15 affidavits accepted and acknowledged. Renewed twice.

[4] Registration No. 2454578, issued May 29, 2001, in International Class 12.  Sections 8 and 15 affidavits accepted and acknowledged.  Renewed. The registration contains a translation statement: "The English translation of the word 'FUTURA' in the mark is 'future.'"

[5] This identification is noted exactly as it appears on the Office database.

Serial No. 76511652
Serial No. 76514799

rearview mirror, shock absorbers, steering wheel, windshield wipers, windshield wiper blades, vehicle propellers, vehicle roll bars, seat covers, sport toy sports vehicles, tires and spare tires, tire rims, stirring boosters, wheel locks, suspension systems, vehicle theft alarms, thrusters for vehicles, wheel bearings, tire inflators, tire pumps, torque converters, plastic parts for vehicles, namely automobile and vehicle exterior and interior trim, plastic extruded decorative of protective trim, racket for vehicles, recreational vehicle awnings, truck campers, rail vehicle for passenger carriage, railway cars, saddles for bicycles and motorcycles, seat belts used in vehicles, side shields, motors, mud flaps, brackets for structural parts of vehicle, brake cables, clutch cables, fork bearings; for motorcycles, handle bars, handlebar control dampers, handle bar clips brick calibers, brick pedals, brake rooters, front spacers, front dash, panels, shift lever, and headlight mounds, pickup truck cabs, wheels, windshields, differentials, drive shaft, drive belts, drive gears, fenders, mud guards, running boards, land vehicles suspension parts, coral springs, leaf spring, land vehicle transmission, axles, license plates frames, lug nut, luggage carriers, mirrors, gas caps, horns, hood shield, hubcap covers, internal combustion engines for land vehicles, children care vehicles, directional signals, disk pads, dollies, door panels, drive shafts, engine camshafts, fitted covers for vehicles, truck lift, calibers, drums, boosters, pad shoes; bicycle parts, namely, frames, bells, gears, handle bars, changers, speed gears, drive chains, disk wheels, spokes for tires, handle brakes, racing number plates, pedals, saddles; axle bearing for land vehicles, vehicle seats, vehicle windows, automobile bodies, chassis, bumpers and replace parts thereof; aircraft structural parts thereof, namely propeller blades, fuselages, landing gears, aircraft bodies, engines, seats, amphibious airplanes, gliders, kit planes, prefabricated planes and their structural parts thereof; rocket ships, lunar rover, and shuttles and parts and structural parts thereof; jet boats, houseboats, pontoon boats, sailboats, sail planes, yachts, hydroplanes, water scooter, ferry boats, boats, ships, hover craft and structural parts thereof; and

International Class 35: distributorships featuring . . . automobiles, trucks, aircraft; retail automobile and vehicle parts stores; online ordering in the field of . . . automotive and vehicle parts; dealerships in the field of automobiles and water-crafts, namely, boats and motorcycles; independent sales representatives in the field of automobiles, aircraft, . . . ; promoting and conducting trade shows in the field of automobile parts.

3

Serial No. 76511652
Serial No. 76514799

Applicant also filed an application to register the mark FUTURE MOTORS, as shown below, for hundreds of goods and services in International Classes 3, 9, 12, 28, 35, 40, 43 and 44:[6]

# FUTURE
## MOTORS

The trademark examining attorney handling that application refused registration of the mark for certain of the goods identified in International Class 12, and certain of the services identified in International Classes 35 and 40, under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), on the ground of likelihood of confusion, citing the same registrations for FUTURA (Registration Nos. 1582462 and 2454578) cited against applicant's FUTURE application. The goods and services for which the mark is refused are as follows:

International Class 12: motor vehicles, namely, automobiles, trucks, vans, cars, sport utility vehicles, vehicles, namely, experimental cars, concept cars, electric cars, gas cars; family cars; racing cars; sports cars; recreational vehicles, namely, campers and motor homes; buses; motorized scooters; all terrain vehicles; motorcycles; bicycles; engines and motors for land vehicles;

---

[6] Serial No. 76514799, filed May 16, 2003, pursuant to Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), in all classes, alleging a bona fide intent to use the mark in commerce, and disclaiming the exclusive right to use the term "MOTORS" apart from the mark as shown.

4

Serial No. 76511652
Serial No. 76514799

International Class 35: retail store services featuring . . . tires; providing information about automobiles for sale by means of the Internet; operation of businesses for others, namely, retail automobile parts and accessories stores, vehicle dealerships, motorcycle dealerships, arranging and conducting trade shows in the field of automobiles; logistics management in the field of vehicles; catalog ordering services featuring vehicles; mail order services featuring vehicles, . . . parts and accessories for vehicles; retail store services featuring . . . automobiles; wholesale store featuring . . . automobiles; wholesale stores featuring auto parts, . . . and automobiles; independent sales representative in the field of vehicles, trucks, ATV, automobiles, electric vehicles; retail store services featuring automobile parts and accessories; retail gas station services featuring gasoline pumps; retail gift stores featuring vehicles; retail consignment stores featuring . . . automobiles; retail services by direct solicitation by sales agents in the field of automobiles; shop at home parties featuring vehicles, . . . parts and accessories for vehicles; dealerships featuring automobiles, . . . motorcycles, on-line trade show in the field of vehicles, . . . land craft and new inventions related to vehicles; customer services in the field of vehicles; preparing audio-visual displays in the field of vehicles; providing door-to-door shopping services in the field of vehicles providing home shopping services in the field of vehicles, . . . land craft, and parts and accessories for vehicles by means of television; and

International Class 40: manufacturing services for others in the field of vehicles, automobiles.

For each application, the examining attorney also asserted that collateral estoppel bars registration of the mark for the refused goods and services. The assertion of collateral estoppel is based on a prior consolidated proceeding in which the Board sustained oppositions to several of applicant's applications.

Upon final refusal of registration of the mark in each of the applications, applicant filed a timely appeal. Applicant

5

and the examining attorneys filed briefs in the respective cases.  Since both applications deal with common questions of law and fact, we are consolidating the appeals and issuing one decision.  TBMP § 1214 (3rd ed. 2011).  Where appropriate, we have taken into account relevant factual differences in the cases.

For the reasons discussed herein, the Board finds the examining attorneys' arguments persuasive regarding the preclusive effect of the prior oppositions on application Serial Number 76511652 (FUTURE) but not 76514799 (FUTURE MOTORS).  The Board further affirms the Section 2(d) refusals to register for both applications.

### Applicant's Identification of Goods and Services

As a preliminary matter, we find it necessary to comment on the sheer volume and array of goods and services in applicant's identifications of goods and services, both within and between classes.  In both applications, in International Class 12 alone, applicant claims to have a bona fide intent to use the mark on goods as diverse as "motorcycles," "ferry boats," and "lunar rovers," while in International Class 35, applicant claims to have a bona fide intent to use the mark in connection with "literary agencies," "business management services" and "wholesale stores featuring [among other things] toys." Although not an issue in this ex parte proceeding, it should be

noted that by identifying such a large number and diverse range of goods and services, the involved application may be subject to challenge in inter partes proceedings, not only to a wider array of likelihood of confusion claims under Section 2(d) but also to potential claims of fraud or lack of a bona fide intent to use the marks in commerce.[7]

## Collateral Estoppel

We consider first the assertion by the examining attorneys in both applications that the issues presented herein are identical to those presented in a prior litigated inter partes proceeding, namely, consolidated Opposition Nos. 91157538, 91157768, 91158277, 91158509, 91158520, 91158786, 91164461, 91164602 and 91165913, all of which were decided by the Board on August 6, 2008. In that consolidated proceeding, applicant herein sought to register the marks FUTURE and *FUTURE/TOMORROW* and design for some of the same goods and services as in the current applications. An opposition was brought by the owner of the two FUTURA registrations which have been cited herein. After completing its likelihood of confusion analysis based on the *du Pont* factors, the Board sustained the oppositions as to applicant's FUTURE mark for the goods in International Classes

---

[7] In noting this, we are not suggesting that the examining attorney should have issued refusals on the grounds of fraud or lack of bona fide intent to use the mark in commerce. *See* TMEP (8th ed. 2011)

12, 35 and 40, and as to applicant's *FUTURE/TOMORROW* and design mark in International Class 12. *See In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973).

The doctrine of collateral estoppel, or "issue preclusion," applies when "a matter has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. Of Educ.,* 465 U.S. 75, 77, n.1 (1984). It is one of the preclusion doctrines encompassed by res judicata. *Id.; see also Sharp Kabushiki Kaisha v. ThinkSharp Inc.*, 448 F.3d 1368; 79 USPQ2d 1376, 1378 (Fed. Cir. 2006). The requirements for application of collateral estoppel are (i) the issue is identical to one in a prior proceeding; (ii) the identical issue was actually litigated; (iii) determination of the issue was necessary to the judgement in the prior proceeding; and (iv) the party defending against preclusion had a full and fair opportunity to litigate the issue in the prior proceeding. *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,* 424 F.3d 1229, 1232, 76 USPQ2d 1310, 1313 (Fed. Cir. 2005) (*citing Montana v. U.S.,* 440 U.S. 147, 153-155 (1979)).

Historically, the general rule was that collateral estoppel was only binding against parties to the prior action. *See* Wright & Miller 18A Federal Practice & Proc. § 4449 (2d ed.

---

Section 720 (Fraud Upon the USPTO); 1101 (Bona Fide Intention to Use the Mark in Commerce).

2011) ("[a]t the same time, the judgment carries the ordinary precedential weight of stare decisis"). However, the Supreme Court has determined that collateral estoppel could, in some situations, be asserted by a non-party to the prior action. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329 (1971) (allowing use of defensive collateral estoppel by a litigant who was not a party to a prior patent invalidity verdict against an asserting plaintiff who was party to the prior action); *see also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331 ("[w]e have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied.").

The Board has applied the doctrine of collateral estoppel in an inter partes proceeding following a prior ex parte proceeding in which a refusal of the applicant's prior application for the same mark and goods or services had been affirmed. *Lukens Inc. v. Vesper Corp.,* 1 USPQ2d 1299, 1301 (TTAB 1986) (Board applied collateral estoppel where applicant had been denied same mark and judgment had been affirmed on appeal to district court), *aff'd mem.*, 831 F.2d 306 (Fed. Cir. 1987); *compare Flowers Industries Inc. v. Interstate Brands Corp,* 5 USPQ2d 1580 (TTAB 1987) (Board declined to apply

collateral estoppel although applicant had been denied mark in prior ex parte proceeding, but sustained opposition on merits); *see also Nextel Communications, Inc. v. Motorola, Inc.*, 91 USPQ2d 1393, 1399 (TTAB 2009) (Board found, in second action between the parties, the requirements of collateral estoppel were met with regard to certain but not all of the goods, and opposer was entitled to judgment on those goods).

We have also, in an ex parte proceeding, applied claim preclusion (res judicata) where an applicant had already been refused registration for the same mark and goods in a prior ex parte proceeding, and applicant did not demonstrate a change of circumstances such as to justify not applying preclusion based on the prior judgment. *In re Bose*, 476 F.3d 1331, 81 USPQ2d 1748, 1752 (Fed. Cir. 2007) (cautioning that Board must be judicious in applying res judicata, but noting, "[in] this case, however, there is no dispute that the same applicant, Bose, is involved in the prior and present proceedings and that there was a prior final judgment on the merits, *i.e.,* the functionality of the identical design.  Thus, the general prerequisites of res judicata have been satisfied."); *compare In re Honeywell Inc.*, 8 USPQ2d 1600, 1601-02 (TTAB 1988) ("In general, there is nothing to preclude an applicant from attempting a second time in an ex parte proceeding to register a particular mark if conditions and circumstances have changed since the rendering of the adverse

10

final decision in the first application.  The question generally

in the second proceeding is whether changes in facts and

circumstances do exist and, if so, whether they can support the

registration sought.")

Here the examining attorneys seek to invoke the doctrine of

collateral estoppel in ex parte proceedings based on a final

judgment entered in a prior inter partes case.  The Court of

Appeals for the Federal Circuit, which we have often referred to

as our primary reviewing court, has advised that "[c]aution is

warranted in the application of preclusion by the PTO."

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., supra,* 76

USPQ2d at 1314.  However, at the same time, we take heed that it

is firmly within our discretion to apply collateral estoppel

where it is warranted.[8]  *See Parklane Hosiery, supra,* 439 U.S. at

---

[8] In so stating, we take note that some of our precedents have referred to the doctrine of stare decisis when applying preclusion in ex parte appeals.  *See In re Hotels.com,* 87 USPQ2d 1100, n.6 (TTAB 2008) ("in the context of this ex parte proceeding, we consider a res judicata argument to be equivalent to a stare decisis argument"), *aff'd* 573 F.3d 1300, 91 USPQ2d 1532 (Fed. Cir. 2009); *In re Johanna Farms Inc.,* 8 USPQ2d 1408, 1411 (TTAB 1988) (Board reversed examining attorney's stare decisis finding due to sufficient presentation by applicant of new Section 2(f) evidence); *In re Alfred Dunhill Ltd.,* 224 USPQ 501, n.7 (TTAB 1984) (finding res judicata in *ex parte* proceedings to be stare decisis).  While stare decisis remains a valid doctrine, which can, *inter alia*, be applicable in a subsequent ex parte proceeding when the applicant contested the issue in a prior ex parte proceeding, the better practice is for an examining attorney to invoke collateral estoppel where it is applicable, as discussed herein.  In that regard, it is also advisable for an examining attorney to make a refusal on the merits (as was done in the present cases) for completeness and taking into account the possibility that a finding of collateral

331.  We must consider that "[c]ollateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326.  The Federal Circuit, in considering a similar situation before the Board of Patent Appeals and Interferences, held that it was appropriate for that Board to find collateral estoppel applicable in an ex parte reexamination proceeding with regard to the claim construction undertaken by a federal district court (in an inter partes proceeding) that had taken place while the Board proceedings were stayed.  *In re Freeman*, 30 F.3d 1459, 31 USPQ2d 1444, 1467 (Fed. Cir. 1994) ("The doctrine of issue preclusion is premised on principles of fairness.  Thus, a court is not without some discretion to decide whether a particular case is appropriate for application of the doctrine.  [citations omitted].").  Accordingly, we look to the applicable factors.

We turn first to application Serial No. 76511652 (FUTURE).  The first question is whether there was an identical issue raised in a prior proceeding.  *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., supra,* 76 USPQ2d at 1313.  We find

---

estoppel may be reversed on appeal. *See* TMEP (8th ed. 2011)  Section 1217.

12

that there was.  The mark in the present case, FUTURE, is identical to the mark litigated in the prior inter partes action, as are various of the goods and services in Classes 12 and 35, the classes involved in the refusal here.

We turn then to the second question.  Was the identical issue actually litigated in the prior proceeding?  We find that it was.  The issue raised in the prior opposition proceedings was the Section 2(d) claim of likelihood of confusion with opposer's marks, the same marks cited in the current proceeding. This ground was raised and litigated by the parties.

We next consider the third question.  Was the determination of the issue necessary to the judgement in the prior proceeding? We find that it was.  Likelihood of confusion was the basis on which the opposer brought the prior oppositions.  The determination of this issue was therefore essential to the resolution of the proceeding.

We then consider the fourth factor necessary to find preclusive effect of collateral estoppel.  Did the party defending against preclusion have a full and fair opportunity to litigate the issue in the prior proceeding?  We find that he did.  There have been no allegations, nor any evidence, that there is any reason not to apply the typical effects of preclusionary judgment to this proceeding.  For these reasons, we find the doctrine of collateral estoppel to be applicable and

to preclude applicant's registration of FUTURE for the refused goods and services in application Serial No. 76511652.

We next consider the applicability of the factors to application Serial No. 76514799 (FUTURE MOTORS). The first question is whether there was an identical issue raised in a prior proceeding. We find that there was not. The marks at issue in the prior oppositions were FUTURE and *FUTURE/TOMORROW* and design. We do not find either of these marks to be substantially identical to the mark FUTURE MOTORS such as to have a preclusive effect in the present action. *Compare Lukens Inc. v. Vesper Corp.,* 1 USPQ2d 1299, 1301 (TTAB 1986) (identical mark sought to be registered), *aff'd mem.*, 831 F.2d 306 (Fed. Cir. 1987); *Nextel Commc'ns, Inc. v. Motorola, Inc.,* 91 USPQ2d 1393, 1398 (prior judgment was based on "nearly the same proposed mark (same cadence, but with a tone at 911 Hz))") Accordingly, there is no need to consider the other three elements. We find that the prior oppositions do not have preclusive effect on applicant's attempt to register Serial No. 76514799 (FUTURE MOTORS). Accordingly, we turn to the merits of the Section 2(d) refusal in that application.

## Likelihood of Confusion, Application No. 76514799 (FUTURE MOTORS)

We base our determination under Section 2(d) on an analysis of all of the probative evidence of record bearing on a

14

likelihood of confusion.  *In re E. I. du Pont de Nemours & Co.,*

*supra,* 177 USPQ at 567 (CCPA 1973); see *also In re Majestic*

*Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203

(Fed. Cir. 2003).  In any likelihood of confusion analysis, two

key considerations are the similarities between the marks and

the similarities between the goods or services.  *See Federated*

*Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ

24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d)

goes to the cumulative effect of differences in the essential

characteristics of the goods and differences in the marks").  We

discuss each of the *du Pont* factors as to which applicant or the

examining attorney submitted argument or evidence.

<u>The Marks</u>

We consider and compare the appearance, sound, connotation

and commercial impression of the marks in their entireties.  *In*

*re E. I. du Pont De Nemours & Co.,* 177 USPQ at 567.  The

question is not whether the marks can be distinguished when

subjected to a side-by-side comparison, but rather whether the

marks are sufficiently similar in their entireties that

confusion as to the source of the goods or services offered

under the respective marks is likely to result.  The focus is on

the recollection of the average purchaser, who normally retains

a general rather than a specific impression of trademarks.  *In*

Serial No. 76511652
Serial No. 76514799

re Jack B. Binion, 93 USPQ2d 1531 (TTAB 2009); Sealed Air Corp. v. Scott Paper Co., 190 USPQ 106 (TTAB 1975).

The mark in the cited registrations consists solely of the word FUTURA. There is a translation statement for the mark "FUTURA" as "future." We find this term to be arbitrary for the goods in the cited registrations ("tires" and "automotive accessories, namely, vehicle wheel caps and hub caps.")

Applicant's mark in application Serial No. 76514799 is FUTURE MOTORS. The first term is FUTURE, which differs from the mark in the cited registration by just one vowel. We find the appearance and sound of "FUTURE" to be quite similar to that of "FUTURA." Furthermore, since the translation of "FUTURA" is "future," we find the terms to be legal equivalents. See In re Spirits Int'l N.V., 563 F.3d 1347, 90 USPQ2d 1489, 1491 (Fed. Cir. 2009); Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). Even those consumers unfamiliar with the foreign language are likely to recognize the similarity in sight and sound of "futura" to "future" and ascribe to the registrant's mark the meaning "future." We note of course that applicant's FUTURE MOTORS mark includes the term "MOTORS." However, since that term is descriptive of the goods and services at issue in the refusal, and is disclaimed, we find "FUTURE" to be the dominant term in that mark. See In re National Data Corp., 753

16

Serial No. 76511652
Serial No. 76514799

F.2d 1056, 224 USPQ 749, 750 (Fed. Cir. 1985) (descriptive or
disclaimed matter is generally considered a less dominant
portion of a mark).

The commercial impression of the mark in the cited
registrations is of the "future." Similarly, the commercial
impression of applicant's FUTURE MOTORS mark is of the "future,"
that these motor-related goods are forward looking. Therefore,
while considering the marks in their entireties, we find that
the similarities significantly outweigh the differences of the
marks and that the marks are similar as to their sight, sound,
connotation, and commercial impression.

This *du Pont* factor weighs in favor of finding a likelihood
of consumer confusion.[9]

#### The Goods and Services and Channels of Trade

Next we consider the similarities or dissimilarities of the
goods and services. In doing so, we keep in mind that the test
is not whether consumers would be likely to confuse the goods
and services but rather whether they would be likely to be
confused as to their source. *San Fernando Electric Mfg. Co. v.*

---

[9] Although we have already found, based on the doctrine of collateral
estoppel, that there is a likelihood of confusion between applicant's
FUTURE mark and the mark in the cited registrations, for the sake of
completeness, we note that because the commercial impression of the
term "future" is the same as that of "futura," and the sight and sound
are highly similar, with the difference of just one ending vowel, this
*du Pont* analysis focusing on the similarity of FUTURA and FUTURE
MOTORS would apply as readily in application Serial No. 76511652
(FUTURE).

17

*JFD Electronics Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Restaurants Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd mem.,* 972 F.2d 1353 (Fed. Cir. 1992).

The refusal in application Serial No. 76514799 is limited to certain goods and services in Classes 12, 35 and 40.[10] Specifically, the examining attorney limited the Section 2(d) refusal to the following goods in International Class 12: motor vehicles, namely, automobiles, trucks, vans, cars, sport utility vehicles, vehicles, namely, experimental cars, concept cars, electric cars, gas cars; family cars; racing cars; sports cars; recreational vehicles, namely, campers and motor homes; buses; motorized scooters; all terrain vehicles; motorcycles; bicycles; engines and motors for land vehicles; to the following services in International Class 35: retail store services featuring . . . tires; providing information about automobiles for sale by means of the Internet; operation of businesses for others, namely, retail automobile parts and accessories stores, vehicle dealerships, motorcycle dealerships, arranging and conducting trade shows in the field of automobiles; logistics management in the field of vehicles; catalog ordering services featuring vehicles; mail order services featuring vehicles, . . . parts

---

[10] Similar goods and services in Classes 12 and 35 were refused by the examining attorney in application Serial No. 76511652 (FUTURE).

and accessories for vehicles; retail store services featuring .

. . automobiles; wholesale store featuring . . . automobiles;

wholesale stores featuring auto parts, . . . and automobiles;

independent sales representative in the field of vehicles,

trucks, ATV, automobiles, electric vehicles; retail store

services featuring automobile parts and accessories; retail gas

station services featuring gasoline pumps; retail gift stores

featuring vehicles; retail consignment stores featuring . . .

automobiles; retail services by direct solicitation by sales

agents in the field of automobiles; shop at home parties

featuring vehicles, . . . parts and accessories for vehicles;

dealerships featuring automobiles, . . . motorcycles, on-line

trade show in the field of vehicles, . . . land craft and new

inventions related to vehicles; customer services in the field

of vehicles; preparing audio-visual displays in the field of

vehicles; providing door-to-door shopping services in the field

of vehicles; providing home shopping services in the field of

vehicles, . . . land craft, and parts and accessories for

vehicles by means of television; and to the following services

in International Class 40: manufacturing services for others in

the field of vehicles, automobiles.

The examining attorney submitted into the record copies of

numerous use-based, third-party registrations identifying both

"tires," or "hub caps" as identified in the cited registrations,

19

on the one hand, and various of the goods and services refused in the application on the other.  Copies of use-based, third-party registrations may serve to suggest that the goods are of a type which may emanate from a single source.  *See In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783, 1785 (TTAB 1993).

For example, the examining attorney submitted evidence to show third-party registrations that include both "tires" or "hub caps" as identified in the cited registrations as well as automobiles (Registration Nos. 3605271, 2949427; 3030001; 3741177; 3248336; 3147817; 3339745); trucks (Registration Nos. 2949427; 3030001; 3166894; 3741177), and motorcycles (Registration Nos. 3319487; 3605271; 3166894; 3147817; 3339745) with respect to the refusal in International Class 12; and services involving wholesale or retail store and online store services, dealership and distributorship services in the field of motor vehicles and automotive parts (Registration Nos. 3514704; 3191617; 3634163; 3005777; 3396344; 3411758) with respect to the refusal in International Class 35.[11]

---

[11] Although the examining attorney's evidence of relatedness of the goods and services concentrates on some of the goods and services in each class, that evidence is sufficient for us to find that the examining attorney has met the burden of showing that there is a likelihood of confusion with respect to all of the refused goods and services in each class. *See Tuxedo Monopoly, Inc. v. General Mills Fun Group,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (likelihood of confusion must be found if there is likely to be confusion with respect to any item that comes within the identification of goods in the application).

Serial No. 76511652
Serial No. 76514799

The examining attorney also submitted Internet evidence showing several third-party car dealerships offering "tires" for sale on their websites. *See wardsdealer.com; jimellischevrolet.com; and carriagechevrolet.com.* This is evidence that consumers expect to find both "tires," as identified in the cited registration, and "automobiles," and "cars" (in International Class 12) as well as "retail stores services featuring . . . tires" (in International Class 35) as identified in the application, emanating from a common source.

Web site excerpts include:

Do We Sell Tires? Please Hold: Our competitors have responded to new-car dealerships getting into this business and they are not taking it lightly. They are head and shoulders above auto dealerships when it comes to presenting tire information over the phone and adding value to the transaction. *www.wardsdealer.com*

Welcome to Jim Ellis Chevrolet Atlanta: For maintenance and repair as well as parts, accessories and tires for your Chevrolet – as well as any other General Motors brand (Cadillac, GMC, Buick, Pontiac, Hummer, Saturn) – our Service and Parts departments are staffed with experienced professionals who get the job done right the first time. *www.jimellischevrolet.com*.

Carriage Chevrolet: Shop for tires at your Huntsville Chevrolet Dealership. *www.carriagechevrolet.com*.

Regarding the refused services in International Class 40, we find an inherent relationship between the "tires" and the "vehicle wheel cap and hub caps" in the cited registrations on the one hand and the "custom manufacture of automobile services" in the application on the other hand, since tires and either hub

21

caps or wheel caps may be an essential element in the manufacture of many automobiles.

In the absence of specific limitations in the registrations, we must presume that registrant's goods will travel in all normal and usual channels of trade and methods of distribution.  *Squirtco v. Tomy Corporation*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *see also In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992) (because there are no limitations as to channels of trade or classes of purchasers in either the application or the cited registration, it is presumed that the services in the registration and the application move in all channels of trade normal for those services, and that the services are available to all classes of purchasers for the listed services).  Since there are no limitations on the channels of trade in applicant's identification of goods and services, we must make the same presumption with regard to applicant's goods and services.

In other words, there is nothing that prevents applicant from offering for sale his automobiles, or services related thereto (once the goods and services are in use) through the same channels of trade and to the same consumers who purchase registrant's tires, wheel caps and/or hub caps, and vice-versa.

Serial No. 76511652
Serial No. 76514799

Accordingly, we find that these *du Pont* factors also weigh in favor of finding a likelihood of consumer confusion.[12]

### Conclusion

We conclude that collateral estoppel is an appropriate doctrine to apply to application Serial No. 76511652 (FUTURE), which is for an identical mark and has been refused for some of the identical goods and services as those at issue in the prior oppositions. Accordingly, we find, based on the doctrine of collateral estoppel (issue preclusion), likelihood of confusion between applicant's FUTURE mark and the FUTURA mark in the cited registrations. For purposes of completeness we also find, for that application, likelihood of confusion based on the *du Pont* factors of the similarity of the marks and the similarity of the refused goods and services to those in the cited registrations, as well as the channels of trade. We do not consider the other *du Pont* factors, for which there was no evidence or argument.

For application Serial No. 76514799 (FUTURE MOTORS), we find the doctrine of collateral estoppel to be inapplicable. That notwithstanding, we also find that applicant's FUTURE MOTORS mark, for the refused goods and services in International Classes 12, 35, and 40, is likely to cause confusion with the FUTURA mark in the cited registrations based on the similarity

---

[12] For the same reasons discussed herein, we find that the second and third *du Pont* factors also favor finding a likelihood of confusion for

23

Serial No. 76511652
Serial No. 76514799

of the marks, the similarity of the goods to those in the cited registrations, and the channels of trade. We do not consider the other *du Pont* factors, for which there was no evidence or argument.

**Decision for application Serial No. 76511652 (FUTURE):**

The refusal to register is **affirmed as to International Class 12 in its entirety**.

The refusal to register is **affirmed as to the following services in International Class 35**:

distributorships featuring . . . automobiles, trucks,
aircraft; retail automobile and vehicle parts stores; online
ordering in the field of . . . automotive and vehicle parts;
dealerships in the field of automobiles and water-crafts,
namely, boats and motorcycles; independent sales representatives
in the field of automobiles, aircraft, . . . ; promoting and
conducting trade shows in the field of automobile parts.

After the period for appeal expires, the application will be forwarded for publication for all the goods in Classes 3, and the following services in Classes 35:

Class 35: Advertising services, namely the dissemination of
advertising materials via the internet and brochures; providing
television and radio advertising for others; production of
television commercials; product endorsements, namely providing
consumer product information via the internet; auctioneering
services; wholesale and retail store services, featuring, food
beverages, toys, appliances, furniture, toys and games, plants,
sporting goods, eye wear, kitchen ware, cards and gifts,

application Serial No. 76511652 (FUTURE).

24

Serial No. 76511652
Serial No. 76514799

novelties, crafts office and home supplies, clothing apparel, movies, music; business management services; distributorships featuring games, toys, computers, cell phones, toys, games, food, beverages, water, pop, fruit juices, non alcoholic beverages, general merchandise, clothing, tools, hardware, health and beauty products, luggage hand bags, eye wear, pharmaceuticals, movies, film, art, music, furniture, books, appliances, house wares; franchising, namely, offering technical assistance in the establishment and for operation of restaurants, hotels, amusement parks, airlines, computers, shoe stores, clothing stores, technology stores, toy stores, health stores, food and beverage store; business management and business administration for others; retail drug stores; retail department stores; retail convenience stores; retail toy stores; retail book stores; retail appliance stores; retail sporting goods stores; retail hardware stores; retail women's, men's and children's clothing stores; retail jewelry stores; retail cosmetics stores; retail gift stores; retail novelty stores; retail hobby stores; retail furniture stores; retail music stores; retail video stores; retail pharmacy stores; retail pet stores; retail electronics stores; promoting the goods and services of others through the distribution of printed advertisements and promotional contests; market research; on-line ordering in the field of toys, books, appliances, clothing, cosmetics, novelty gifts, hobby kits, furniture, music, videos, pharmaceutical products, pet products, electronics; public relations; business marketing consulting; accounting services; independent sales representatives in the field of food, beverages, clothing; operation of telephone switchboard for others; operation of telephone communication centers for others; opinion polling for business or advertising purposes; organizing and conducting job fairs; packaging articles to order and specification of others; payroll preparation; personal management services for musical performers; personal management services for entertainers; personal management consultation; personnel relocation; photocopying; physician referrals; preparing and placing outdoor advertisements for others; preparing business reports; preparing computer slide transparencies for use by businesses; preparing mailing lists; processing manufacturers rebates; processing manufacturers coupons; product demonstrations; literary agencies; mail order book clubs; mail order catalog services featuring clothing, shoes, magazines, and jewelry; mail sorting; maintaining registry of breeds in the field of dogs and horses; managed-care services, namely, utilization review and pre-certification services; medical cost management; medical referrals; medical transcription services; product merchandising; modeling

Serial No. 76511652
Serial No. 76514799

agencies; multilevel marketing business services; talent agencies; tax assessment; tax consultation; tax preparation; telemarketing; telephone auctions; telephone answering services; telephone directory information; theatrical agencies; tracking and monitoring insurance compliance; tracking, locating and monitoring of vehicles, maritime vessels and aircraft services for commercial purposes; copyright management consultation; cost accounting; data processing services; demographic consultation; employment agencies; employment out placing services; energy price comparison services; estimating contracting work; evaluation of stand timber; exchange services, namely, bartering of goods for others; production and distribution of radio and television commercials'; promoting sports competitions and concerts of others

Serial No. 76511652
Serial No. 76514799

**Decision for application Serial No. 76514799 (FUTURE MOTORS):**

The refusal to register is **affirmed as to the following goods in International Class 12:**

motor vehicles, namely, automobiles, trucks, vans, cars, sport utility vehicles, vehicles, namely, experimental cars, concept cars, electric cars, gas cars; family cars; racing cars; sports cars; recreational vehicles, namely, campers and motor homes; buses; motorized scooters; all terrain vehicles; motorcycles; bicycles; engines and motors for land vehicles;

The refusal to register is **affirmed as to the following services in International Class 35:**

retail store services featuring . . . tires; providing information about automobiles for sale by means of the Internet; operation of businesses for others, namely, retail automobile parts and accessories stores, vehicle dealerships, motorcycle dealerships, arranging and conducting trade shows in the field of automobiles; logistics management in the field of vehicles; catalog ordering services featuring vehicles; mail order services featuring vehicles, . . . parts and accessories for vehicles; retail store services featuring . . . automobiles; wholesale store featuring . . . automobiles; wholesale stores featuring auto parts, . . . and automobiles; independent sales representative in the field of vehicles, trucks, ATV, automobiles, electric vehicles; retail store services featuring automobile parts and accessories; retail gas station services featuring gasoline pumps; retail gift stores featuring vehicles; retail consignment stores featuring . . . automobiles; retail services by direct solicitation by sales agents in the field of automobiles; shop at home parties featuring vehicles, . . . parts and accessories for vehicles; dealerships featuring automobiles, . . . motorcycles, on-line trade show in the field of vehicles, . . . land craft and new inventions related to vehicles; customer services in the field of vehicles; preparing audio-visual displays in the field of vehicles; providing door-to-door shopping services in the field of vehicles providing home shopping services in the field of vehicles, . . . land craft, and parts and accessories for vehicles by means of television;

27

Serial No. 76511652
Serial No. 76514799

The refusal to register is **affirmed as to the following**

**services in International Class 40**:

manufacturing services for others in the field of vehicles, automobiles.

After the period for appeal expires, the application will

be forwarded for publication for all the goods in Classes 3, 9,

28, 43 and 44, and the following goods and services in Classes

12, 35, and 40:

Class 12: air craft; personal water craft, namely, boats; airplanes; seaplanes; gyro copters, namely, a rotary aircraft that uses a propeller to fly; helicopters; amphibious airplanes; military aircraft; experimental air craft; gliders, hydroplanes, recreational water craft, namely, boats; ships; cruise ships; spacecraft, namely, lunar rovers; speed boats; locomotives; yachts; sail boats; hovercraft; marine vehicles, namely, ferry boats; space shuttles; space craft, namely, rockets; and structural parts for the foregoing

Class 35:  Marketing and advertising for others; on line trading services in which seller posts products to be auctioned and bidding is done via the Internet; retail store services featuring clothing, cameras, fur, furniture, groceries, jewelry, garden and nursery supplies, music and records, televisions; retail store services featuring general consumer merchandise; exchange services, namely, bartering of goods for others; promoting the goods and services of others through infomercials played on customer point of purchase television monitors in retail stores; promoting the goods and services of others by means of operating an on line shopping mall with links to the retail web sites of others; providing consumer product information via the Internet; providing information about the goods and services of others via the global computer net work; operation of business for others, namely, air craft dealerships, water craft dealerships, assisted living facilities, property leasing agencies; opinion polling for business or advertising purposes, order fulfillment services; organizing and conducting job fairs; arranging and conducting trade shows in the field of arts, and crafts; arranging and conducting of fairs and exhibitions for business and advertising purposes in the field of commercial land development and real estate; personal

management services for entertainers; placing advertising for others; advertising services, namely, creating corporate and brand identity for others; business consulting services; procurement, namely, purchasing weapons and office furniture for others; new product demonstration; literary agencies; logistics management in the field of homes, aircraft, water craft, clothing, toys, and cosmetics; mail order book clubs; catalog ordering services featuring air craft, water craft, shoes, cosmetics, clothing general merchandise; mail order services featuring air craft, water craft, shoes, clothing, cosmetics; managed care, namely, electronic processing of health care information; business management services; market analysis; market research; development of marketing strategies and concepts; inventorying merchandise; modeling agencies; multi-level marketing business services; online ordering services featuring general consumer merchandise; talent agencies; television advertising agencies; retail store services featuring aircraft, boats; video stores; wholesale store featuring aircraft, boats; wholesale stores featuring clothing, toys, jewelry; distributorships featuring general consumer merchandise; wholesale store featuring general consumer merchandise; publicity agents; clearing houses for radio and television programs; independent sales representative in the field of boats, ships, sport boats, yachts, air craft, airplanes, jets; franchise services, namely, offering technical and business management assistance in the establishment and operation of specialty stores; retail grocery stores; supermarkets; retail pharmacy services; retail stores featuring health food; retail gift stores featuring air craft, water craft; retail consignment stores featuring home furnishings, clothing, toys, electronics; discount stores in the field of women's clothing sporting goods, and cameras; shop at home parties featuring air craft, water craft; foreign trade information and consultation; industrial management assistance; accounting services; advertising agencies, namely, promoting goods and services of others; advertising services, namely, creating corporate logo identity for others; agencies for advertising time and space; conducting business conferences; art galleries; dealerships featuring boats, and aircraft; business appraisals; business evaluation of business matters; intellectual property business management planning; business management supervision; business marketing and direct mail consulting services; business merchandising display services; business networking; business organizational consultation; business planning; business relocation; business research; providing facilities for business meetings; business succession planning; business supervision; buying clubs; commercial and

industrial management assistance, commercial information agencies; computerized on line ordering featuring general merchandise and general consumer goods; concession stands featuring toys, food, and souvenirs; on-line trade show in the field of aircraft, land craft; employee relations information services; consumer research; customer services in the field of air craft, water craft; direct marketing advertising for others; developing promotional campaigns for business; dissemination of advertising for others on the Internet; dissemination of advertising material; electronic billboard advertising; promoting the economic development in USA, UK and Saudi Arabia by preparing and placing advertisements in an electronic magazine; promoting the goods and services of others through infomercial played on customer point of purchase television monitors in retail stores; incentive award programs to promote the sale of products and services of others; administrative processing of purchase orders within the framework of services provided by mail-order companies; arranging of contractual trade services with third parties; toys, electronics, and cosmetics; providing home shopping services in the field of air craft, by means of television; retail services by direct solicitation by sales agents in the field of air craft and water craft

Class 40: Manufacturing services for others in the field of aircraft, and boats.