NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BAD ELF, LLC,**
*Appellant*

**v.**

**FLEX LTD.,**
*Appellee*

_____

2022-1839

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91254336.

_____

Decided: August 14, 2023

_____

MARINA CUNNINGHAM, McCormick, Paulding & Huber PLLC, Hartford, CT, argued for appellant. Also represented by NICHOLAS HOLMES.

JULIA SHURSKY, Sheridan Ross PC, Denver, CO, argued for appellee. Also represented by MATTHEW CHRISTIAN HOLOHAN, PAMELA NICOLE HIRSCHMAN.

_____

Before DYK, MAYER, and REYNA, *Circuit Judges*.

DYK, *Circuit Judge.*

Bad Elf, LLC appeals a decision of the Trademark Trial and Appeal Board ("Board"). The Board sustained Flex Ltd.'s opposition to the registration of Bad Elf's FLEX mark on the grounds of likelihood of confusion with Flex's three registered marks FLEX, FLEX (stylized), and FLEX PULSE. Because the Board erred in its analysis of the strength of Flex's marks, we affirm-in-part, vacate-in-part, and remand.

## BACKGROUND

Bad Elf filed an intent-to-use trademark application under 15 U.S.C. § 1051(b) seeking to register the mark FLEX on June 24, 2019, for "Global positioning system (GPS) apparatus; Global positioning system (GPS) receivers in International Class 9; and GPS navigation services in International Class 39."[1]  J.A. 1–2. On February 26, 2020, Flex opposed the registration on the grounds of priority and likelihood of confusion with Flex's three registered marks, FLEX, FLEX (stylized), and FLEX PULSE. The Board limited its focus to FLEX and FLEX PULSE.

Relevant here, Flex's FLEX mark was registered July 12, 2016, for services including, in class 35, "supply chain management services; transportation logistics services, namely, arranging the transportation of goods for others; logistics management in the field of electronics; . . . [and] inventory management services for others." J.A. 100. Flex's FLEX PULSE mark was registered on December 12,

---

[1]    International Classes ("classes") are categories of various goods and services as established by the international classification system under the Nice Agreement Concerning the International Classification of Goods and Services for the Purposes of the Registration of Marks. *See* 37 C.F.R. §§ 2.85, 6.1.

2017. FLEX PULSE was registered for goods and services, including, in class 9, for the goods:

> [c]omputers; computer software for use in supply chain management, logistics and operations management, quality control, inventory management, and scheduling of transportation and delivery; [c]omputer software in the nature of downloadable mobile applications for use in supply chain management, logistics and operation management, quality control, inventory management, and scheduling of transportation and delivery[.]

J.A. 102.[2]

Because Flex challenged Bad Elf's registration in both class 9 and class 39, the Board considered the likelihood of confusion between (1) Bad Elf's FLEX and Flex's FLEX PULSE for each mark's class 9 goods and (2) Bad Elf's FLEX for its class 39 services and Flex's FLEX for its class 35 services. The Board considered the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973),[3] ultimately finding a likelihood of confusion between each set of marks.

---

[2] Flex's marks are registered for other goods and services in other classes. We focus on FLEX and FLEX PULSE in these particular classes because the Board based its analysis on only FLEX and FLEX PULSE in these classes of goods and services.

[3] The *DuPont* factors are:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or

The Board first considered the similarity or dissimilarity of the marks, finding FLEX and FLEX PULSE to be "similar in appearance, sound, connotation and overall commercial impression," J.A. 23, weighing in favor of a

---

registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i. e. "impulse" vs. careful, sophisticated purchasing.

(5) The fame of the prior mark (sales, advertising, length of use).

(6) The number and nature of similar marks in use on similar goods.

(7) The nature and extent of any actual confusion.

(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9) The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10) The market interface between applicant and the owner of a prior mark . . . .

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion, i. e., whether *de minimis* or substantial.

(13) Any other established fact probative of the effect of use.

476 F.2d at 1361.

finding of likelihood of confusion. The Board further noted that Bad Elf's FLEX and Flex's FLEX are identical and found that this "strongly favors [a finding of] a likelihood of confusion." J.A. 24.

The Board then considered the strength of Flex's marks. The Board first considered the issue of commercial strength. Bad Elf had submitted twelve third-party uses of marks that included the word "flex." The Board found that about half those marks pertained to logistics and rendered FLEX "somewhat commercially weakened" but not so weak "that it falls on the weaker end of the strength spectrum, making the term commercially weak." J.A. 27.

The Board then considered the conceptual strength of Flex's marks. Bad Elf had submitted four third-party registrations for goods in class 9, including "FLEX" for "computer software used for logistics management" and "FLeX" for "[a]dvanced transportation controller for managing a variety of intelligent transportation systems." J.A. 28. The Board found that the third-party registrations had "some probative value" but that the marks were "insufficient in number to be probative of any conceptual weakness of FLEX for the goods or services listed in [Flex's] pleaded registrations." J.A. 29.

The Board then considered the goods and services listed in each mark's registration. The Board compared the class 9 goods for Bad Elf's FLEX and Flex's FLEX PULSE and found that "[Bad Elf's] GPS apparatus and receivers are related to [Flex's] computer software and mobile app insofar as they could perform the same functions and be used in the same field" and that, therefore, the factor weighed in favor of finding a likelihood of confusion. J.A. 37. For the services identified by Bad Elf's FLEX and Flex's FLEX marks, the Board found the services to be complimentary and thus to weigh in favor of a finding of a likelihood of confusion.

Next, the Board considered the channels of trade and classes of consumers. For both the goods and services, the Board found that the channels of trade overlap and that the goods and services were likely to be encountered by the same consumers, thus further favoring a finding of a likelihood of confusion.

Considering the purchasing conditions and the degree of sophistication of the consumers, the Board found that, given the nature of Bad Elf's goods and services, the average consumer would "exercise a greater degree of care in making purchasing decisions." J.A. 42. Accordingly, the Board found that this factor weighed against finding a likelihood of confusion.

The Board next considered Bad Elf's alleged use of its mark since November 12, 2019, without any reported incidents of confusion, which the Board found to be a neutral factor. Finally, the Board considered whether Bad Elf had the right to exclude third parties from using its mark. Absent evidence of a right to exclude, the Board found this factor to be neutral.

The Board balanced the factors and determined that "[a]lthough we find that the relevant consumers are likely to exercise some degree of care, this is outweighed by the strong similarity and identical nature of the marks, the relatedness of the goods and services, and overlapping established, likely-to-continue channels of trade." J.A. 44. Thus, the Board found there to be a likelihood of confusion between both (1) Bad Elf's FLEX mark for its class 9 goods and Flex's FLEX PULSE for its class 9 goods and (2) Bad Elf's FLEX mark for its class 39 services and Flex's FLEX mark for its class 35 services.

Bad Elf appealed. A separate case also involving Flex's marks, *Spireon, Inc. v. Flex Ltd.*, No. 2022-1578 (Fed. Cir. June 23, 2023), was identified as related, and oral argument for both cases was held on the same day. On June 26, 2023, the Court issued an opinion in *Spireon*, holding that

the Board had erred in its treatment of the strength of Flex's marks and vacating and remanding for the Board to reconsider the likelihood of confusion factors in light of the *Spireon* opinion. After the *Spireon* opinion was issued, the panel ordered supplemental briefing in the present case on the following question: "What bearing does *Spireon, Inc. v. Flex Ltd.*, No. 2022-1578 (Fed. Cir. June 23, 2023), have on the issue of the commercial and conceptual strength of Appellee's marks?" Order 2, Dkt. No. 31. The parties submitted supplemental briefing. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Likelihood of confusion is a question of law based on underlying factual findings regarding the *DuPont* factors. *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322 (Fed. Cir. 2017). We review the Board's legal conclusions de novo and factual findings for substantial evidence. *Id.*

### I

This case potentially presents an issue similar to that involved in *Spireon*. In *Spireon*, the applicant was seeking to register the mark FL FLEX on goods that were similar to the goods and services registered under Flex's FLEX, FLEX (stylized), and FLEX PULSE marks. In the opposition proceeding, the applicant submitted third-party registrations that were identical to Flex's FLEX mark for identical goods or services. We held that, where the third-party marks are identical marks for identical goods or services as the opposer, absent evidence of non-use for the commercial strength analysis, the marks must be given substantial weight in both the conceptual strength and commercial strength analyses. Where the third-party marks and opposer's marks are identical marks for identical goods or services, opposer's marks nevertheless "will retain some measure of protection against a new registration for an identical mark for identical goods." *Spireon*, slip op. at 13–14. Where the applicant's marks and opposer's

marks are not identical, and the opposer does not prove non-use of the third-party registrations, "the commercial strength of the [opposer's] marks must be considered weak as to [the applicant's] non-identical mark," *id.* at 14, as was the case in *Spireon*.

Under *Spireon*, the Board must determine whether third-party prior registrations exist using an identical mark for identical goods or services as the opposer's registered marks, and, if so, whether the opposer's registered marks at issue are different from the applicant's marks for identical goods or services. Here, the only relevant opposer mark is FLEX (FLEX PULSE being different from the prior third-party mark on its face), which indisputably was used in one earlier third-party-registered mark. However, the parties disagree whether FLEX was used for identical goods or services in the earlier third-party-registered mark. The third-party registration generally covers goods for software for logistics management. Flex's FLEX mark at issue here covers services, including "supply chain management services; transportation logistics services, namely, arranging the transportation of goods for others; logistics management in the field of electronics; . . . [and] inventory management services for others." J.A. 100. While the prior third-party mark covers goods rather than services, the goods covered are nonetheless virtually identical to the services covered by Flex's FLEX mark. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307 (Fed. Cir. 2018) (goods and services may be compared for assessing the *DuPont* factors).

If the third-party marks and opposer's marks are identical, as here, then the opposer's marks and the applicant's marks are compared to see if they are identical or non-identical for identical goods or services. Here, the parties agree that one of Flex's and one of Bad Elf's marks (FLEX) are the same and appear to agree that the goods and services covered by Bad Elf's FLEX (GPS apparatus and receivers, and GPS navigation services) and the services covered by

Flex's FLEX (logistics management services) are not identical. Indeed, the Board found the services covered by each party's FLEX mark to be "complementary," J.A. 38, not identical. Therefore, we come to the same conclusion as we did in *Spireon*, that is, that the conceptual and commercial strength of the opposer's mark is substantially diluted.

With respect to the Board's analysis of the conceptual strength of Flex's marks, we also note an inconsistency in the Board's reasoning. The Board found that the "third-party registrations are related to [Flex's] transportation or logistics services, and therefore have some probative value." J.A. 29 (emphasis added). But the Board found that this evidence was nonetheless "insufficient in number to be probative of any conceptual weakness of FLEX for the goods or services listed in [Flex's] pleaded registrations." J.A. 29. In short, the Board claimed to give the evidence probative value but ultimately did not give it any weight in the conceptual strength analysis. Having determined that the evidence was probative, the Board erred in failing to give it weight in the strength analysis.

The probative value of evidence of third-party registrations is to show that a mark is conceptually weak. Strength is not an all-or-nothing measure, but rather varies along a spectrum. *See Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 1325 (Fed. Cir. 2017) (per curiam). Thus, it is inconsistent to give evidence of third-party registrations probative value, but then find that the evidence in no way weakens opposer's marks.

Regarding the FLEX PULSE mark, the Board independently found a likelihood of confusion between Flex's FLEX PULSE for its class 9 goods and Bad Elf's FLEX for its class 9 goods. But in analyzing the strength of the FLEX PULSE mark, the Board treated it the same as the FLEX mark itself. Given our conclusions with regard to the FLEX mark, the Board must reconsider the strength determination as to the FLEX PULSE mark as well. If the

FLEX mark is considered to be weak, that may also affect the Board's finding that Bad Elf's FLEX mark and Flex's FLEX PULSE mark "are similar in appearance, sound, connotation and overall commercial impression." J.A. 23.

The parties also disagree as to whether *Spireon* is relevant in other respects to this case on the issue of strength. We think these issues are best addressed by the Board in the first instance on remand.

We vacate with respect to the Board's analysis as to the strength of Flex's marks and remand to the Board to reconsider this *DuPont* factor (and then to reweigh the *DuPont* factors) in light of this opinion and *Spireon*.

## II

Bad Elf also argues that the Board erred with respect to other issues. Regarding commercial strength, Bad Elf primarily argues that Flex provided no survey evidence to show marketplace strength and that the Board erred in not considering this to be a negative factor. Bad Elf further argues that the lack of actual confusion was a factor that favored Bad Elf.

We find neither of these other arguments persuasive. We therefore affirm in all respects other than the Board's analysis of the strength of Flex's marks as described above and the ultimate weighing of the *DuPont* factors.

## CONCLUSION

We vacate the Board's opinion with regard to the strength of Flex's marks (an analysis that could also affect the comparison between the FLEX and FLEX PULSE marks). In other respects, the Board's decision is affirmed. The case is remanded to the Board to reconsider the conceptual and commercial strength of Flex's marks and reweigh the *DuPont* factors in light of this opinion and *Spireon*.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

COSTS

No Costs.